UNITED STATES of America,
Plaintiff–Appellee,

v.

Laura Michelle MORNING,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Francisco Ignacio LEON–YANEZ,
Defendant–Appellant.

Nos. 94–10248, 94–10328.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1995.

Decided Aug. 28, 1995.

Gary S. Kneip, Tucson, AZ, for defendant-appellant Laura Michelle Morning.

Thomas G. Hippert, Dardis & Hippert, Tucson, AZ, for defendant-appellant Francisco Ignacio Leon–Yanez.

Robert L. Miskell, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: CANBY and FERNANDEZ, Circuit Judges, and FITZGERALD,* District Judge.

FERNANDEZ, Circuit Judge:

Francisco Leon–Yanez conditionally pled guilty to conspiracy and to possession with intent to distribute marijuana in violation of

---

* Honorable James M. Fitzgerald, Senior United States District Judge, United States District Court for the District of Alaska, sitting by designation.

21 U.S.C. §§ 841(a)(1), 846. Laura Michelle Morning conditionally pled guilty to misprision of Leon–Yanez's possession with intent to distribute felony. 18 U.S.C. § 4. Both reserved the claim that evidence should have been suppressed because it was seized without a warrant and without consent. Both now appeal on that ground, and Morning also asserts that a prior conviction was improperly used in setting her criminal history score under the United States Sentencing Guidelines. We affirm.

## BACKGROUND

In June of 1993, federal agents received information from a confidential source that a man named "Pancho" and a woman had marijuana at a particular residence. Border Patrol Agent Salim Dominguez and DEA Special Agent Mike Groseclose approached the front door of the residence and knocked. Morning answered the door. Agent Dominguez informed her that he and the other agents were conducting a narcotics investigation and suspected that there may be narcotics on the premises. He also asked Morning for permission to search the residence, but Morning replied that she would rather have the agents obtain a search warrant. Dominguez then asked Morning if there was anybody else living in the house, and she told them that Pancho lived there. She then left to summon Leon–Yanez, and after a short time he came to the door. Dominguez told him that he was conducting a narcotics investigation, and Leon–Yanez, before he was even asked for his name, said "It's in the back there, but it's not mine." Dominguez then asked him for permission to search the premises, and he gave oral and written consent. When the agents entered, Morning said nothing further about their presence. The agents found approximately 226 pounds of marijuana in the house's one bedroom, the refrigerator, and the house's one bathroom. It turned out that Leon–Yanez had provided for its storage there.

Both appellants moved to suppress evidence of the search because there was no warrant and no valid consent, but their motions were denied.[1] They then pled guilty and reserved the suppression issues. Sentencing followed and the district court determined that Morning's criminal history category was II.[2] Morning complained that it should be lower because her collateral attack on a prior conviction should have been sustained. The district court disagreed. Both Leon–Yanez and Morning now appeal.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 and 18 U.S.C.A. § 3742(a).

▬ "In general, we review determinations of motions to suppress *de novo*." *United States v. Becker*, 23 F.3d 1537, 1539 (9th Cir.1994). However, we review the trial court's factual findings for clear error. *Id.* The voluntariness of a consent to search is a factual question which is determined "by considering the totality of the surrounding circumstances." *United States v. Kelley*, 953 F.2d 562, 566 (9th Cir.1992). We review the district court's determination of that question for clear error. *Id.*

▬ We review applications of the Sentencing Guidelines *de novo*. *See United States v. Buenrostro–Torres*, 24 F.3d 1173, 1174 (9th Cir.1994) (per curiam).

## DISCUSSION

The principal issues in this case revolve around the search which uncovered the large cache of marijuana. Leon–Yanez consented to that search, but it is now claimed that his consent was not voluntarily given. Were that true, suppression of the evidence would result, and both he and Morning would benefit. Morning adds that even if Leon–Yanez did consent, she expressly did not. That, she argues, means that the evidence must be suppressed as to her in any event. Because the threshold issue is the validity of Leon–

---

**1.** The suppression motions were heard and denied by Judge Coughenour.

**2.** The sentencing was conducted by Judge Roll.

Yanez's consent, we address that first and take up Morning's separate issue second.

### A. *Voluntary Consent by Leon–Yanez.*

■ When Leon–Yanez was first addressed by the officers, he immediately blurted out the fact that there was marijuana stored in the house. When the officers then asked if they could look, he said that they could. He also signed a written consent form, in which he indicated that he freely consented and had not been threatened or forced in any way. Now, however, he claims that his consent to the search was not effective because it was not voluntarily given.

That is a question of fact, and its resolution depends on the totality of the circumstances. *See United States v. Castillo,* 866 F.2d 1071, 1082 (9th Cir.1988). As we said in *Castillo:*

> We have previously indicated that several factors must be considered in determining whether consent is voluntary. None of them are dispositive. These factors include: (1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained. The fact that some of these factors are not established does not automatically mean that consent was not voluntary.

*Id.* (citations omitted); *see also United States v. Carbajal,* 956 F.2d 924, 930 n. 3 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 272, 126 L.Ed.2d 223 (1993); *Kelley,* 953 F.2d at 566.

In other words, although we have established these factors to aid in the decision-making process, the full richness of any encounter must be considered by the district court. Here it is apparent that the district court did not clearly err in determining that the consent was valid.

The officers did not unholster their guns during the encounter with Leon–Yanez and did not threaten him in any way. In fact, they had merely asked Morning if someone else was there, whereupon she sent Leon–Yanez out to the door. He was not arrested, nor was she. He said that he resided there and that he paid all of the bills, but before the police could ask for his name he also said that marijuana was in the house. He added that it was not his.

Not surprisingly, the conversation then quickly flowed to a request by the officers to look in the house. When Leon–Yanez said that they could, they also obtained his signature on a written consent form which was in both Spanish and English. They then entered. They had not told Leon–Yanez that he could refuse consent nor had they given him *Miranda*[3] warnings or said that they could get a search warrant. But none of those is a *sine qua non.* They are simply factors.

While Leon–Yanez now says that he did not understand that he could refuse and that he had a questionable immigration status, which concerned him, the evidence showed that he had actually decided to cooperate even before any request was made. At least, he had decided to tell the officers that marijuana was in the house.

Leon–Yanez also complains that he was not told that Morning had said she would prefer it if the officers obtained a warrant, but he does not indicate how that was coercive as to him. If anything, it shows that she did not feel coerced at all, and there is nothing to indicate that the officers became more aggressive when they spoke with him or that they told him that she had consented. Of course, in considering his claims we are concerned with his Fourth Amendment rights, not with those of Morning. *See United States v. Padilla,* —— U.S. ——, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993) (per curiam).

Every encounter has its own facts and its own dynamics. So does every consent. The district court assessed the evidence in this case and determined that Leon–Yanez's consent was, all things considered, voluntarily given. That determination was not clearly erroneous.

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### B. *Morning's Refusal to Consent.*

Morning asserts that because she told the agents that she preferred to have a warrant obtained, the search without a warrant violated her Fourth Amendment rights.

■ The evidence clearly showed that Leon–Yanez had an at least equal interest in the use and possession of the house. Although Morning had signed the rental application, she did so on behalf of herself and her "spouse," Leon–Yanez. Moreover, it was undisputed that he paid the bills, resided there full time, and had as much control over the house as she did. That is underscored by the fact that after she expressed a preference for a warrant, she went and talked to Leon–Yanez, sent him to the front door, and made no protest after he gave his consent to the search. Once he went to the front door, Morning remained in the house while he stood in the doorway and spoke with the agents. The house itself was very small— under 1,000 square feet—so she could not have been very far away. That is some indication that she recognized Leon–Yanez as an equal occupant of the property, or, perhaps, as a person who had an even superior interest that could trump hers. In fact, the district court found that he actually did have "superior authority" over the residence.

It is against that backdrop of the parties' relationship to the house and each other that we must answer Morning's assertion that her Fourth Amendment rights were violated. We start, as we must, with *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In that case, Matlock jointly occupied part of a home with Gayle Graff. Matlock was arrested in the front yard and was not asked for permission to conduct a search. Instead, the police asked Graff and she consented. The Court said:

> It has been assumed by the parties and the courts below that the voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant, permitting evidence discovered in the search to be used against him at a criminal trial.

*Id.* at 169, 94 S.Ct. at 992. The Court agreed with that proposition and went on to say that:

> [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

*Id.* at 171, 94 S.Ct. at 993. As the Court then explained:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7 (citations omitted).

That would appear to answer the issue presented by Morning, but in *Matlock* the defendant was not actually asked for his consent. Also, although he was on the scene he was arrested in the yard while Graff was approached at the door, and the Court did comment that it had in recent cases allowed third-party consent "as against the absent, nonconsenting person...." *Id.* at 170, 94 S.Ct. at 993. Thus, while *Matlock* rendered the law in this area translucent, it did not quite render it transparent. Others have striven to supply the necessary clarity.

In *United States v. Sumlin*, 567 F.2d 684 (6th Cir.1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), the defendant refused to give his consent to a search of an apartment, but his female companion gave consent and the search went forward. The court declared that the fact of the defendant's presence made no difference because

the defendant in *Matlock* was present in the front yard. *Id.* at 687. It went on to discount the fact that the defendant had refused to consent to the search. It said:

> The rationale behind [the *Matlock* ] rule is that a joint occupant assumes the risk of his co-occupant exposing their common private areas to such a search. There is no reasonable expectation of privacy to be protected under such circumstances. We cannot see how the additional fact of Appellant's initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of privacy.

*Id.* at 688. *Sumlin* itself was not entirely clear because the defendant had not urged the joint occupier to refuse consent and had even suggested that she need not do so. *Id.* at 686. However, the court put that uncertainty to rest in a later case where those ambiguities did not exist. *See J.L. Foti Constr. Co. v. Donovan,* 786 F.2d 714, 716–17 (6th Cir.1986).

In *United States v. Hendrix,* 595 F.2d 883, 885 (D.C.Cir.1979) (per curiam), the court reached the same conclusion. Even though a joint occupant of an apartment was present and objected to the search, the police obtained consent from the other joint occupant. That was enough. *See also Lenz v. Winburn,* 51 F.3d 1540, 1548 (11th Cir.1995) (third party with common authority can consent, "even when a present subject of the search objects"); *United States v. Donlin,* 982 F.2d 31, 33 (1st Cir.1992) ("Valid consent may be given by a defendant or a third party with 'common authority' over the premises. Third party consent remains valid even when the defendant specifically objects to it.") (citation omitted); *United States v. Baldwin,* 644 F.2d 381, 383 & n. 1 (5th Cir.Unit A 1981) (per curiam) (a wife could give effective consent to automobile search where she had at least joint control over it even where the defendant had previously refused consent, but her ownership interest may have been

greater than the defendant's); *United States v. Morales,* 861 F.2d 396, 400 n. 9 (3d Cir. 1988) (*Baldwin* noted with approval).

We have wiped away some of the fuliginous overlay that *Matlock* left. Thus, while we have not provided the answer to Morning's particular questions, we have removed some of the obscurity. In *United States v. Impink,* 728 F.2d 1228 (9th Cir.1984), a landlord, who had some right of access to a tenant's premises, impliedly gave consent to a search, but the tenant, who was present, objected. We held that the landlord's unequal right of access coupled with the tenant's objection rendered suppression of the fruits of the search necessary. *Id.* at 1232–34.

In *United States v. Warner,* 843 F.2d 401 (9th Cir.1988), we took up a similar case. There, too, a landlord had consented to a search of the tenant's property. *Id.* at 402. We noted the three factors that we had considered in *Impink,* that is "(1) whether the third party has an equal right of access to the premises searched; (2) whether the suspect is present at the time the third party consent is obtained; and (3) if so, whether the suspect actively opposes the search." *Id.* at 403.[4] The latter two factors were not involved, and we determined that the landlord did not have an equal right of access. *Id.* Suppression followed.

Of course, neither of those cases is like the one at hand because in both of them the consenting landlord had an interest which was inferior to that of the defendant. *Cf. United States v. Yarbrough,* 852 F.2d 1522, 1533–34 (9th Cir.) (where landlord's right of access was as strong as that of tenant, landlord could give consent to search), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). Here the interest of Leon–Yanez was at least as strong as that of Morning, so the major fact upon which *Impink* and *Warner* turned was absent.

**4.** In *United States v. Valencia–Roldan,* 893 F.2d 1080, 1082 (9th Cir.), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990), in a parenthetical describing the holding of *Warner,* we stated that *Warner* said that third-party con-

sent "must meet" these criteria. That, however, was a dictum entirely unnecessary to our decision of the case and was not an accurate reflection of *Warner* in any event.

Similarly unhelpful is our pre-*Matlock* decision in *Lucero v. Donovan*, 354 F.2d 16 (9th Cir.1965). There we held that a person who was a "welcome visitor" at an apartment could not effectively give his consent to a search when the actual resident was there and protested. *Id.* at 20–21. That case has no relevance here because there can be no doubt that Leon–Yanez was much more than a welcome visitor.

More on point are cases in which the defendant was present when consent was obtained from a person who did have equal control over the property to be searched. In those cases, we have found the consent to be valid despite the defendant's presence. Thus, in *United States v. Canada*, 527 F.2d 1374, 1379 (9th Cir.1975), *cert. denied*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976), the defendant asserted that because she was not absent a third party's consent to search was not proper. We said that one need only look at *Matlock* to refute that contention because there the defendant was present but "[t]he Court looked not to the defendant's presence or absence but to whether or not the third party 'possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *Id.* at 1379 (citation omitted). Similarly, in *United States v. Childs*, 944 F.2d 491, 495 (9th Cir.1991), we held that "the valid consent of a person with common authority will justify the search of a residence even if the co-occupant is physically present." *See also Kelley*, 953 F.2d at 566 (defendant was on the scene when co-occupant gave consent to a search).

However, in none of those cases did we actually decide whether a consent to search given by a co-occupant is valid as against the defendant when both are on the scene but the defendant has refused to consent. We now agree with the courts that have an-swered that question in the affirmative.[5] We agree that the primary factor is the defendant's reasonable expectations under the circumstances. Those expectations must include the risk that a co-occupant will allow someone to enter, even if the defendant does not approve of the entry. The risks to property or privacy interests are not substantially lessened because of the defendant's own lack of consent. Although there is always the fond hope that a co-occupant will follow one's known wishes, the risks remain. A defendant cannot expect sole exclusionary authority unless he lives alone, or at least has a special and private space within the joint residence. As the Supreme Court said in *Matlock*, where people have joint access and control over property "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. So it was here.[6] Either Morning or Leon–Yanez could have consented to entry into and search of their common area. Leon–Yanez did. Morning is bound.

## C. *Prior Conviction.*

At sentencing the district court determined that Morning's criminal history category was II. *See* U.S.S.G. § 4A1.1 (Nov. 1993). Among other things, it determined that she had a previous conviction for domestic violence. She does not dispute the fact of the conviction, nor does she claim that she did not have counsel at that time. She asserts, instead, that her plea was coerced because she feared continued incarceration if she did not plead. Thus, she sought to collaterally attack the conviction, but the district court ruled that she could not.

---

**5.** We express no opinion on the question whether a co-occupant who is *not* present on the scene could give a consent that would be effective against an objecting co-occupant who *was* present.

**6.** While technical property concepts do not decide this issue, it is worth noting that, in general, co-tenants are entitled to full enjoyment of the joint property, and are not allowed to exclude the other co-tenants from it. *See, e.g.,* 4 Witkin, Summary of California Law, § 264 at 465–66 (9th Ed.1987); 16 Cal.Jur.3d, *Cotenancy and Joint Ownership*, § 22 (1983); *United States v. Washington*, 774 F.2d 1470, 1478 (9th Cir.1985). The insights reflected in that rule do lend support to our decision. One cannot expect sole control when one has co-owners or co-occupants.

Unfortunately for her, the district court was correct. The law does not permit her to collaterally attack a prior conviction at sentencing, unless it was obtained in derogation of her right to counsel. *See United States v. Myers,* 41 F.3d 531, 535 (9th Cir. 1994); *United States v. Burrows,* 36 F.3d 875, 884–86 & n. 10 (9th Cir.1994); *see also Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 1738, 128 L.Ed.2d 517 (1994); *United States v. Price,* 51 F.3d 175, 177–78 (9th Cir.1995). Thus, we affirm the sentence.

## CONCLUSION

It has been said that if you wish to keep a secret, do not tell anyone. It might also be said that if you wish to keep things secret, do not place them where others have the right of joint access. In either case, you risk disclosure to others—even the authorities. So it was here.

Leon–Yanez, for reasons best known to himself, gave the agents his voluntary consent to search the home. Because he was present and had at least equal authority over the entire premises, his consent was sufficient, even though Morning had refused to consent. Morning's Fourth Amendment rights were not violated because, when she agreed to become a co-occupant with Leon–Yanez, she assumed the risk that he would do just what he did.

It may seem ironic that Leon–Yanez created the hazard to Morning in the first place when he brought marijuana into the house and then helped cause her downfall when he consented to the search. Ironic, perhaps, but not unconstitutional.

AFFIRMED.