UNITED STATES of America, Plaintiff–Appellee,

v.

Eddie Pablo FLORES, Defendant–Appellant.

No. 96–10285.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1999.

Decided April 2, 1999.

Richard Parker Arens, Cunliffe & Cook, Agana, Guam, for the plaintiff-appellant.

John N. Glang, Assistant United States Attorney, Agana, Guam, and David S. Kris, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: HARLINGTON WOOD, JR.,[1] THOMPSON and THOMAS, Circuit Judges.

1. The Honorable Harlington Wood, Jr., Sen- ior United States Circuit Judge for the Sev-

DAVID R. THOMPSON, Circuit Judge.

Eddie Pablo Flores ("Flores") was the leader of an organization that imported methamphetamine from the Philippines to Guam. He bought methamphetamine from a supplier in the Philippines, hired a courier to transport it to Guam, and then sold it to a street-level dealer for distribution to end users. Flores appeals his conviction and sentence for conspiracy to import methamphetamine, 21 U.S.C. §§ 952(a), 960, 963; conspiracy to distribute crystal methamphetamine, 21 U.S.C. §§ 841(a)(1), 846; and attempted possession with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 846. Flores contends that the trial court erred in (1) admitting evidence seized in a search of Flores's apartment after Flores's co-tenant consented to the search; (2) admitting evidence seized from a third-party's apartment in which Flores was arrested; (3) allowing the Government to use plea-bargained testimony; and (4) enhancing Flores's sentence for his role in the offenses and for obstruction of justice. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

After Flores's courier, Jeanne Kim Shin ("Shin"), was arrested at the Guam airport for possessing over 1 kilogram of methamphetamine, Shin agreed to cooperate with the authorities, including making a "controlled delivery" of counterfeit drugs to Flores. Shin had been recruited to smuggle drugs for Flores through Son Ok Yi ("Mimi"). Mimi, who had gone with Shin to the Philippines but had not yet returned, had given Shin the key to Mimi's apartment ("Apartment 820") for Shin to use in dealing with Flores. Law enforcement agents had Shin contact Flores from Apartment 820 and then hid in an adjoining bedroom. The agents observed Flores and Shin complete the planned drug transaction, and then they arrested Flores. After obtaining a search warrant, the agents searched Apartment 820 and discovered

$37,900 in cash, methamphetamine, marijuana, and drug paraphernalia.

The agents asked Flores for his consent to search his apartment ("Apartment 221"). He refused. Some of the agents, however, tricked the occupant of that apartment, Gina Pak ("Pak"), into partially opening the door. After the agents showed Pak their badges and identified themselves, Pak opened the door completely, stepped aside, and allowed the officers to enter Apartment 221. Pak, who was Flores's girlfriend and his co-tenant of Apartment 221, then consented in writing to a search of their apartment. That search yielded 35 items, including a pay-owe ledger in Flores's handwriting, three scales, methamphetamine, drug paraphernalia, marijuana, plastic baggies, and a heat-sealing machine. Pak also agreed to cooperate with the authorities.

During the controlled delivery between Flores and Shin in Apartment 820, other agents were observing the apartment building. They observed an individual leave Apartment 221 and drive away in a pickup. The agents stopped the pickup for a traffic violation and, after observing drug paraphernalia and suspected methamphetamine inside the pickup, they held the driver, Paul Blas ("Blas"), for questioning. Blas, who sold drugs purchased from Flores, agreed to cooperate with the authorities.

## PROCEDURAL HISTORY

Flores was indicted and pleaded not guilty to each charge. He moved to suppress all evidence seized from Apartment 221. The district court denied the motion.

During a jury trial, Shin and Blas testified about Flores's drug exploits. Both the prosecution and the defense questioned Shin and Blas about the terms of each witness's agreement with the authorities. The jury was instructed to "consider [the testimony of witnesses who testified

enth Circuit Court of Appeals, sitting by desig- nation.

pursuant to a plea agreement] with great caution." The jury found Flores guilty of each count.

Prior to sentencing, the Probation Office prepared a Presentence Report (PSR). The PSR recommended a four-level increase in Flores's offense level under U.S. Sentencing Guideline § 3B1.1(a) because of his role as an organizer or leader of the conspiracy. The PSR also recommended that if the district court found that Flores "produced a false handwriting exemplar and that such conduct was misleading in a material respect to obstruct [his] investigation, prosecution, or sentencing," the district court should impose a two-level enhancement for obstruction of justice. Flores filed no objection or response to the PSR, and in fact agreed that the four-level sentence enhancement for Flores's role in the offense was proper.

The district court imposed the PSR's recommended enhancements both for role in the offense and obstruction of justice, and sentenced Flores to three consecutive life sentences. Flores appeals.

## DISCUSSION

### A. Evidence seized from Apartment 221

 Flores contends the district court erred in admitting evidence seized during a search of Apartment 221. Flores concedes that Pak was a co-tenant of Apartment 221 and that she consented to the search.[2] Citing *Lucero v. Donovan*, 354 F.2d 16 (9th Cir.1965), however, Flores argues that co-tenant Pak's consent was ineffective because Flores had common authority to consent or protest the search, and he protested. This argument lacks merit.

 In *United States v. Morning*, 64 F.3d 531 (9th Cir.1995), we held that a co-tenant's consent to the search of a residence was effective even if the other co-tenant protested:

A defendant cannot expect sole, exclusionary authority unless he lives alone, or at least has a special and private space within the joint residence. As the Supreme Court said in [*United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)], where people have joint access and control over property "it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 U.S. at 171 n. 7, 94 S.Ct. 988. So it was here.

*Morning*, 64 F.3d at 536. We distinguished *Lucero* as holding only that "a 'welcome visitor' at an apartment could not effectively give his consent to a search when the actual resident was there and protested." *Id.* (citing *Lucero*, 354 F.2d at 20–21). Thus, "[e]ither [Flores] or [Pak] could have consented to entry into and search of their common area. [Pak] did. [Flores] is bound." *Id.* The district court did not err in admitting evidence seized from Apartment 221.

### B. Evidence seized from Apartment 820

 Arguing that a warrantless arrest in a private dwelling is presumptively unreasonable, Flores contends that the district court erred by admitting evidence seized by law enforcement officials during their search of Apartment 820. Because Flores did not raise this issue in the district court, we review for plain error. There was no error. Flores lacks standing to challenge the search of Apartment 820.

 To challenge the government's use of evidence found in Apartment 820 on Fourth Amendment grounds, Flores must demonstrate "that he personally [had] an expectation of privacy in the place searched, and that his expectation [was]

---

2. Before the district court, Flores argued that Pak's consent was not voluntary. By not raising this issue on appeal, he waived it. *Men-*

*doza v. Block*, 27 F.3d 1357, 1363 (9th Cir. 1994).

reasonable." *Minnesota v.. Carter,* —— U.S. ——, ——, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998) (citing *Rakas v. Illinois,* 439 U.S. 128, 143–44 & n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Apartment 820 was Mimi's residence. She had consented to its use by Shin to deliver drugs to Flores. Flores contends he had a legitimate expectation of privacy in Mimi's Apartment 820 because "[h]e was an invited guest" and because "with his involvement in the alleged distribution operation, [he] would have an interest in the items seized."

■■ In *Carter,* the Supreme Court held that defendants who were in another person's apartment for a short time solely for the purpose of packaging cocaine had no legitimate expectation of privacy in the apartment and, thus, any search which may have occurred did not violate their Fourth Amendment rights. —— U.S. at ——–——, 119 S.Ct. at 473–74. The Court distinguished between the legitimate privacy expectations of overnight guests and the mere permission to be on the premises given to those "essentially present for a business transaction and [ ] only in the home a matter of hours." *Id.* at ——, 119 S.Ct. at 473. Flores, who was only present in Apartment 820 to conduct a brief drug transaction, has no standing

to object to the admission of evidence seized from Apartment 820.[3]

## C. Witness testimony, 18 U.S.C. § 201(c)(2), and plain error

Flores argues that the government violated 18 U.S.C. § 201(c)(2) and the Guam Rules of Professional Conduct (collectively "section 201(c)(2)")[4] by offering leniency to witnesses in exchange for their testimony.[5] Therefore, he contends, the district court erred by not suppressing the testimony of Shin, Blas, and Pak.[6] *See United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998) (explaining the theory espoused by Flores), *rev'd en banc,* 165 F.3d 1297 (10th Cir.1999). Flores concedes he did not raise this issue in the district court.

■ We do not reach the question whether the government violated section 201(c)(2) because even if it did, the district court did not commit plain error in admitting the testimony of Shin, Blas, and Pak.

■ At the time of the district court proceedings, no court had ever excluded evidence on the ground that the government violated section 201(c)(2). Since Flores's trial and sentencing, all six circuits that have considered this issue have held section 201(c)(2) does not apply to the government. *See United States v. Ramsey,* 165 F.3d 980, 987 (D.C.Cir.1999) ("[S]ection 201(c)(2) does not prohibit the

---

3. At oral argument before this court, Flores contended for the first time that he had standing to object to the search of a co-conspirator's apartment. Even if we were to reach this issue, *see United States v. Martini,* 31 F.3d 781, 782 n. 2 (9th Cir.1994), Flores's argument is without merit. *See United States v.. Padilla,* 508 U.S. 77, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993) (rejecting the argument that a defendant has a legitimate expectation of privacy in places or property under the control of a co-conspirator).

4. Rule 3.4(b) of the Guam Rules of Professional Conduct for Lawyers provides that a lawyer shall not "offer an inducement to a witness that is prohibited by law." Whether or not the government violated Rule 3.4(b) is determined by whether the government violated 18 U.S.C. § 201(c)(2), which provides:

> Whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... shall be fined under this title or imprisoned for not more than two years, or both.

5. Flores's unopposed motion to supplement the record to include the written plea agreements between the government and Shin, Blas, and Pak is granted. *See* Fed.R.App.P. 10(e).

6. It is difficult to tell from the record before us whether Pak testified at either Flores's trial or sentencing hearing, but it makes no difference to our disposition of this case.

Government from granting leniency in exchange for truthful testimony."); *United States v. Johnson*, 169 F.3d 1092, 1097–98 (8th Cir.1999) (same); *United States v. Lowery*, 166 F.3d 1119, 1122–24 (11th Cir. 1999) (same); *U.S. v. Singleton*, 165 F.3d 1297, 1300–01 (10th Cir.1999) (en banc) (holding that including the government within "whoever" would be absurd and would deprive the sovereign of an established prerogative); *United States v. Ware*, 161 F.3d 414, 418–24 (6th Cir.1998) (same); *United States v. Haese*, 162 F.3d 359, 367–68 (5th Cir.1998) ("To apply section 201(c)(2) to the government in this case is 'unsound, not to mention nonsensical, especially in its creation ex nihilio of an exclusionary rule barring testimony from virtually every cooperating federal witness.'" (quoting *United States v. Eisenhardt*, 10 F.Supp.2d 521, 521 (D.Md. 1998))).

■ Although we have not yet considered the section 201(c)(2) issue directly, we have repeatedly approved of the government's use of incentives to elicit relevant testimony. *See, e.g., United States v. Cuellar*, 96 F.3d 1179, 1182–83 (9th Cir.1996) (holding that the government is not precluded from using the testimony of an informant who "got paid a ton of money"), cert denied, 520 U.S. 1109, 117 S.Ct. 1117, 137 L.Ed.2d 318 (1997); *United States v. Moody*, 778 F.2d 1380, 1384–85 (9th Cir. 1985) (refusing to exclude testimony that was obtained pursuant to a plea bargain), amended by 791 F.2d 707 (9th Cir.1986); *Darden v. United States*, 405 F.2d 1054, 1056 (9th Cir.1969) ("It is well-established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice, ... even where the accomplice hopes to receive lenient treatment.... The fact of a bargain, or of the hope or expectation of leniency, affects only the weight of the testimony, not its admissibility." (citations omitted)). Thus, the district court's "error," if any, was not plain under the law of this (or any other) circuit.

■ ■ Moreover, even if Flores could establish that the district court plainly erred, he cannot show that the "error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). Although Shin and Blas were important witnesses against Flores, particularly as to the conspiracy charges, the effect of their plea-bargained trial testimony was minimized by other powerful evidence.[7] Most of Shin's testimony was duplicated by the testimony of agents who recounted Shin's confession at the airport and admissions she made during her cooperation with the authorities. Her controlled delivery of counterfeit drugs to Flores in Apartment 820 was observed by agents who testified about it. Blas's testimony about Flores's drug empire was confirmed by the quantity of methamphetamine involved and the pay-owe ledger in Flores's handwriting.

■ In addition, the jury was made fully aware of the possible taint of the testimony of Shin and Blas. The issue was the subject of direct and cross-examination and a jury instruction. "[Even though an informer may have a motive to lie] it does not follow that his [or her] testimony was untrue, nor does it follow that his [or her] testimony was constitutionally inadmissable. The established safeguards of the Anglo–American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his [or her] testimony to be determined by a properly instructed jury." *Hoffa v. United States*, 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In sum, not only was the alleged "error" not plain, if indeed any error occurred at all, it did not affect the fairness, integrity, or public reputation of any judicial proceeding.

D. Sentencing enhancements

1. Enhancement for role in the offense

■ The district court enhanced Flores's sentence pursuant to section

---

7. Again, Pak appears not to have testified.

3B1.1 of the Sentencing Guidelines. Section 3B1.1 allows a district court to increase a defendant's level of offense by four "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. Flores's only challenge to the organizer/leader enhancement is that the district court "did not make specific findings" supporting the enhancement.

■ ■ We will not consider the merits of Flores's argument. Flores waived his right to challenge the enhancement "because he agreed to the adjustment and failed to present the issue in the district court." *United States v. Visman*, 919 F.2d 1390, 1394 (9th Cir.1990). *Accord, United States v. Bauer*, 84 F.3d 1549, 1563 (9th Cir.1996) (holding that a defendant waived a challenge to the amount of marijuana attributed to him for sentencing by failing to challenge the amount attributed to him in the PSR). Because Flores agreed to the offense role enhancement, he cannot now complain that the district court should have made additional findings before imposing that enhancement.

2. Enhancement for obstruction of justice

Flores contends that the district court failed to make sufficient findings to support the two-level upward adjustment for obstruction of justice. Section 3C1.1 provides that a sentencing court may impose a two-level upward adjustment "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The district court imposed a two-level upward adjustment in Flores's sentence after finding that his distortion of his handwriting in a court-ordered "exemplar was a purposeful obstruction of the analysis [of the exemplar

by a handwriting expert]." Flores disputes the sufficiency of this finding.

■ ■ Citing *United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), Flores argues that a district court may not impose an obstruction of justice enhancement unless the court makes "independent findings" that "encompass all of the factual predicates for a finding of perjury." In *Dunnigan*, however, the Court was addressing the enhancement of a defendant's sentence "if the court finds the defendant committed perjury at trial." 507 U.S. at 88–89, 113 S.Ct. 1111. Requiring that all the elements of perjury be present before a district court may adjust a defendant's sentence for obstruction of justice *based on perjury* is appropriate. On the other hand, requiring findings encompassing the elements of perjury would be inappropriate where, as here, the district court finds that a defendant obstructed justice, not by perjury, but by falsifying a handwriting exemplar.

■ ■ We join other circuits that have held that falsifying a handwriting exemplar constitutes obstruction of justice under § 3C1.1. *See, e.g., United States v. Taylor*, 88 F.3d 938, 943–45 (11th Cir.1996) (affirming the two-level enhancement of a defendant's sentence for attempting to disguise his handwriting exemplar); *United States v. Valdez*, 16 F.3d 1324, 1335 (2d Cir.1994) ("[T]here are few better examples of a classic obstruction of justice than a defendant who refuses to give handwriting samples when compelled by a subpoena. [The defendant's] disguise of his handwriting made difficult the comparison of his writing with that in the drug transactions notebook seized by the government, thus hindering the government in its investigation."). The Seventh Circuit explains:

[W]illfully disguising a handwriting exemplar that is to be provided to the FBI for comparison to writings that will be introduced at trial amounts to the sort of obstruction of evidence contemplated by § 3C1.1. To begin with, it amounts to

concealing evidence, one's handwriting style, that, in this case, was material to the official investigation. Additionally, [the commentary to § 3C1.1 explains that obstructive conduct includes violations of] 18 U.S.C. §§ 1512(b)(1) and 1515(a)(3)(D) [which] provide that knowingly submitting a sample that is misleading in any material respect in order to influence an individual's testimony is unlawful.

*United States v. Yusufu,* 63 F.3d 505, 514–15 (7th Cir.1995); *see* U.S.S.G. § 3C1.1, comment. (n.i). Once the district court found that Flores had willfully disguised his handwriting exemplar to mislead expert analysis, the two-level upward adjustment of Flores's sentence was proper.[8]

In sum, there is no reversible error in Flores's conviction or sentence.

AFFIRMED.

---

8. During oral argument before this court, Flores argued for the first time that the district court erred by imposing a § 3C1.1 enhancement without finding that his actions actually impeded his investigation, trial, or sentencing. We need not consider this argument, *see Martini,* 31 F.3d at 782 n. 2, and it is without merit anyway. *See, e.g., United States v. Ancheta,* 38 F.3d 1114, 1118 (9th Cir.1994) ("[I]t is not necessary that a defendant's false statements actually mislead or impede the machinery of justice, only that they have the potential for doing so." (citing *United States v. Baker,* 894 F.2d 1083, 1084 (9th Cir.1990) ("Section 3C1.1 on its face encompasses 'attempted' obstruction of justice as well as actual obstruction.")).)