**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Wesley ARLT, Defendant–**
**Appellant.**

No. 97–50588.

D.C. No. CR–91–00329–DT.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 2000.

Decided June 28, 2001.

Before NOONAN, TROTT and BERZON, Circuit Judges.

MEMORANDUM [1]

FACTS

We state the facts as presented by the government and accepted by the jury. Arlt challenges the testimony of an important witness, Russell Higgins, who was a co-conspirator but not indicted and who was not known for his veracity. The jury evidently believed him, and we are not given sufficient reason to find him incredible, especially as the substance of his testimony tallies with much other direct and circumstantial evidence.

As early as December 13, 1989 officers engaged in surveillance of Chem Labs Supplies in Placentia, California observed

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

Arlt purchasing chemicals that could be used as precursors in the manufacture of methamphetamine. Two days earlier, Arlt had paid $11,050 in cash for two 650 pound barrels of hydriodic acid (HI) from West Agro in Kansas City, Missouri. The surveillance team traced Arlt's van from Placentia to San Diego, where he delivered the chemicals to a residence where methamphetamine was being made. On December 22, 1989, for $16,575, Arlt bought three more 650 pound drums from West Agro.

HI, an ingredient essential to the making of the drug, was hard to get in California. Through his aunt, Deanna Pierce, Arlt located another supplier of it, Calabrian International in Port Neches, Texas. Using the same shell company as Arlt, "AAA Minerals," Pierce informed Calabrian that AAA Minerals owned gold mines and that the company wanted the HI as a catalyst in the refining of gold. Arlt and Pierce bought a cashier's check for $33,000 and on February 12, 1990 Arlt picked up the HI at that cost from Calabrian. Over the next year Pierce ordered 135 barrels of HI, weighing over 79,000 pounds, and costing about $600,000 from Calabrian. The purchase price was supplied by Arlt in the form of cash, a cashier's check, or a wire transfer. In March 1990, Arlt bought some old mines near Daggett, California and in June 1990, he bought an old gold mine in Nevada in order to maintain the cover story that the HI was being used to refine gold.

In February 1991, surveillance officers traced Arlt's shipments of HI to makers of methamphetamine and arrested them. In March 1991 Arlt and his co-conspirators were arrested.

## PROCEEDINGS

Following the return of a superseding indictment by the grand jury, Arlt was tried and convicted on March 6, 1992. He appealed the court's refusal to let him represent himself. His appeal was sustained and his conviction reversed on December 1, 1994. *United States v. Arlt*, 41 F.3d 516 (9th Cir.1994). On May 18, 1995, the grand jury returned a Second Superseding Indictment against him. Arlt now requested representation, and counsel was appointed for him. On August 25, 1995, Arlt moved to dismiss the indictment on the grounds of double jeopardy. The motion was denied. Arlt appealed. On May 15, 1996, this court rejected his appeal. The mandate was spread on August 26, 1996, and trial was set for November 26, 1996. Arlt asked for new counsel, who sought more time to prepare this complex case. Trial was postponed to March 11, 1997. On April 23, 1997, the jury convicted Arlt. He was sentenced to life imprisonment on November 17, 1997.

Arlt appeals to this court. We have referred Arlt's multiplicity claim to an en banc panel of this court and consider the remainder of his claims here.

## ANALYSIS

*Conspiracy Instruction.* The court instructed the jury:

Defendant Charles Wesley Arlt is charged in Count 1 of the second superseding indictment with conspiring to knowingly and intentionally aid and abet the manufacture of one kilogram ... of methamphetamine, and to knowingly and intentionally manufacture one kilogram or more of methamphetamine ...

In order for a defendant to be found guilty, ... the Government must prove each of the following elements beyond a reasonable doubt as to the Defendant:

First: Beginning and ending on or about the dates alleged in the indictment there was an agreement between two or

more persons to commit the crime as charged in the indictment, namely, the conspiracy to manufacture and to aid and abet the manufacture of methamphetamine; and

Second: The Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

I shall discuss with you briefly the law relating to each of thee elements.

A conspiracy is a kind of criminal partnership, an agreement of two or more persons to commit one or more crimes. The crime is the agreement to do something unlawful. It does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all of the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is charged with the same responsibility as if that person had been one of the originators of it.

On the other hand, one who has no knowledge of the conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not, thereby, become a conspirator.

Similarly, a person does not become a member merely by associating with one or more persons who are conspirators, nor merely by knowing of the existence of the conspiracy.

The Government need not prove that an alleged co-conspirator knew all of the purposes of and all of the participants in the conspiracy. It is sufficient for the Government to prove that Defendant Charles Arlt knew, or had reason to know, that the others were involved in a project for illegal distribution of chemicals to be used for the manufacture of methamphetamine and that his benefits were probably dependent upon the success of the entire operation.

■ The court asked if there were any objections to the instructions before the court delivered them. The defendant asked that the court modify "had reason to know that others were involved in a project for illegal distribution." Counsel stated: "I request that the court add to that language 'and that the Defendant intended that those chemicals be used for the manufacture of methamphetamine', which is the element." The court did not rule on this request but ultimately did not honor it. It is now argued that this instruction misstated the law because conspiracy to aid and abet requires intent to further the underlying crime.

Isolated by itself, the instruction was erroneous. Considered in the context of the whole set of instructions to the jury, it was not misleading. In the plainest terms, the jury had been told that Arlt could not be convicted unless he (1) agreed to aid and abet; (2) knew the object of the conspiracy and intended to help accomplish it; and (3) willfully participated in the plan that was the object of the conspiracy with the intent to advance a purpose of it. The instructions adequately covered the elements. *See United States v. Knapp,* 120

F.3d 928, 930 (9th Cir.1997). And in context, the "had reason to know language" to which Arlt objects simply elaborated on the point made earlier in the instructions that if the necessary elements were made out, then it was not necessary, in addition, to show that "the person [had] full knowledge of all the details of the conspiracy."

■ *Lesser Included Offense Instruction.* Arlt was charged with a conspiracy to manufacture methamphetamine under 21 U.S.C. § 841(a). He claims that he was entitled to receive an instruction on the offense of distributing a listed chemical under 21 U.S.C. § 841(c)(2) as a lesser included offense.

■ To resolve this issue, we compare the statutory elements of both offenses in order to determine whether the elements of the lesser offense are a subset of the elements of the greater. *See Schmuck v. United States,* 489 U.S. 705, 716–17, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Here, the offense of possession of listed chemicals with intent to manufacture requires proof of an element not included in the offense of conspiracy to manufacture a controlled substance—the element of possession of a listed chemical. Contrary to Arlt's argument, it is possible to be guilty of conspiring to manufacture a controlled substance without possessing a listed chemical, for example by involvement in financing the manufacturing enterprise or arranging for the procurement of an apparatus or containers sued in the manufacturing process. Therefore, possession of listed chemicals is not a lesser included offense of the offense of conspiracy to manufacture a controlled substance.

■ *Money Laundering.* Arlt was convicted of money laundering in violation of 18 U.S.C. § 1956(a)(1). Arlt's grand jury indictment alleged each element of the crime in the conjunctive, alleging that Arlt,

"aided, abetted, counseled, commanded, induced, procured, and caused financial transactions involving the proceeds of felonious ... dealing in controlled substances and listed chemicals, with the intent to promote the carrying on of said unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds." Although the indictment was written in the conjunctive, the statute states the elements of the offense in the disjunctive. The jury instruction for this charge properly tracked the language of the statute. Arlt contends that he was entitled to a jury instruction in the conjunctive following the wording of his indictment. He is mistaken. "A jury may convict on a finding of any of the elements of a disjunctively defined offense, despite the grand jury's choice of conjunctive language in the indictment." *See United States v. Bettencourt,* 614 F.2d 214, 219 (9th Cir.1980).

Arlt claims that the district court erred by giving the Ninth Circuit Pattern Instruction 5.6 in this money laundering case. We reject this claim also. The district court properly gave this instruction as part of the specific instructions on conspiracy for count one and not part of the general instructions.

■ We also reject Arlt's claim that the government was required to prove as an element of money laundering that Arlt obtained the laundered proceeds from a prior, separate criminal activity. *See United States v. Sayakhom,* 186 F.3d 928, 940–41, *as modified by* 197 F.3d 959 (9th Cir.1999). As the money laundering counts in this case are each based on funds derived from completed criminal acts, there was no error.

■ *Second Superseding Indictment.* The government sought a Second Su-

perseding Indictment in which it added a prayer for criminal forfeiture to the First Superseding Indictment. Arlt argues that this indictment was defective because the grand jury failed to consider the whole indictment. If an indictment is valid on its face and was returned by a legally constituted and unbiased grand jury, it is sufficient to call for trial of the charges on the merits. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The record demonstrates that the government provided the grand jury transcripts of the previous grand jury proceedings as well as testimony summarizing the evidence that had been presented at the earlier proceedings. There was no error in the Second Superseding Indictment.

■ *Vindictive Prosecution.* Arlt bases his vindictive prosecution claim on the government's decision to add a criminal forfeiture prayer to the Second Superseding Indictment filed after he appealed his first conviction. The proper standard of review for vindictive prosecution is unsettled. *See United States v. Noushfar,* 140 F.3d 1244, 1245 (9th Cir. 1998). However, we need not reach the standard of review question as we hold there was no error even under a de novo review. A second prosecution is vindictive if charges of increased severity were filed because a defendant exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness. *See id.* Here, the government sought civil forfeiture against Arlt in a separate legal action before he exercised any statutory, procedural, or constitutional rights. The government sought criminal forfeiture because this court reversed its civil forfeiture judgment. On this record, Arlt has failed to establish that the government sought an increased punishment in circumstances that give rise to an appearance of vindictiveness.

■ *Conspiracies.* In count one, Arlt was charged with a single conspiracy with the objects of aiding and abetting the manufacture of methamphetamine by means of distributing controlled chemicals, and of manufacturing methamphetamine. Arlt contends that he is entitled to reversal on this count because the government's proof of the second object was based on untrustworthy testimony. He also contends that the conspiracy count is legally insufficient as to the second object because the evidence supports the existence of multiple conspiracies. Neither argument has merit. A general guilty verdict on a multiple object conspiracy count is adequate as long as the evidence is sufficient as to any one of the objects charged. *See Griffin v. United States,* 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). Here, the evidence was sufficient to support the jury's verdict as to both objects.

■ *Recusal.* Arlt sought recusal of the trial judge assigned to hear his case and the judge refused. Recusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *See United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir. 1997). Arlt does not allege any extrajudicial source of bias. Opinions formed by the judge on current or prior proceedings will support a recusal motion only if they display a "deep-seated favoritism or antagonism that would make fair judgment impossible." *See id.* at 1454. A careful review of the record reveals no indication of bias or antagonism.

■ *Witness Intimidation.* Arlt contends that the district court intimidated defense witness Daryl House when it admonished House that he might be pros-

ecuted for perjury if he lied under oath. A trial court may violate a defendant's right to due process of law under the Fourteenth Amendment by using "unnecessarily strong terms" or "threatening" admonishments that "effectively [drive] that witness off the stand." *See Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). However, no error results where the admonishment was "neither coercive, threatening, grossly improper nor prejudicial." *See United States v. Harlin,* 539 F.2d 679, 681 (9th Cir.1976). The district court's comments to House were not improper.

▮ *The Speedy Trial Act.* Arlt contends that his trial was not brought within the statutory time required by the Speedy Trial Act, 18 U.S.C. § 3161. The Speedy Trial Act was triggered when this court issued its mandate for this case on July 16, 1996. On August 26, 1996, the district court appointed new counsel for Arlt. The district court expressly found that this case was sufficiently complicated to make trial within the 70 day statutory period impractical and that an ends of justice exclusion was necessary pursuant to 18 U.S.C. § 3161(h)(8) in order to allow Arlt's new counsel adequate time to prepare for Arlt's defense. Arlt's trial began on March 11, 1997. There was no violation of the Speedy Trial Act.

▮ *Evidentiary Rulings.* Arlt objects to the admission at trial of Exhibits 90, 91, 118, 307, and 308 on hearsay grounds. A careful review of the record in each case demonstrates that these exhibits were not offered to prove the truth of the matters asserted. Nor was it required to instruct the jury to limit its consideration of this evidence to its non-hearsay use. *See United States v. McLennan,* 563 F.2d 943, 947 (9th Cir.1977). As to Exhibit 91, the drug ledger, the district court plainly erred by admitting it into evidence without giving a limiting instruction indicating that its only relevance was to show the character of the place where it was found, i.e., that the ledger connected the place where it was found to the drug trade. *See United States v. Jaramillo–Suarez,* 950 F.2d 1378, 1383 (9th Cir.1991); *United States v. Walker,* 993 F.2d 196, 199 (9th Cir.1993). However, because the ledger was found at co-conspirator Gage's home, not Arlt's, and because there was abundant evidence connecting Arlt to the charged drug conspiracies, Arlt has not shown that he suffered prejudice by the ledger's admission.

▮ We also reject Arlt's claim that the district court erred by admitting the testimony of Higgins and Hill based on the fact that the government offered Higgins and Hill sentencing leniency in return for their promises to testify truthfully in Arlt's case. Arlt failed to raise this issue at trial, therefore it is reviewed for plain error. *See United States v. Flores,* 172 F.3d 695, 699 (9th Cir.1999). As we have frequently approved of the government's use of incentives to elicit testimony, any error committed by the district court was not plain. *See id.*

▮ *Cumulative Error.* A cumulative error analysis aggregates the effect of errors. *See United States v. Easter,* 66 F.3d 1018, 1023 (9th Cir.1995). Here Arlt claims cumulative error based on a laundry list of meritless evidentiary errors. After careful review of the record, we find no error. Where the district court did not err, the cumulative error claim is rejected. *See id.*

The judgment of the district court is AFFIRMED.