**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tatsuya AMANO, Defendant–Appellant.**

**No. 99–10607.**

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 11, 2000[1]

Filed Oct. 12, 2000

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See*   Fed. R.App. P. 34(a)(2).

Jane L. McClellan, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Karen S. McDonald, Assistant United States Attorney, Appellate Section, Phoenix, Arizona, for the plaintiff-appellee.

Before: ALDISERT,[2] GRABER, and FISHER, Circuit Judges.

GRABER, Circuit Judge:

Defendant Tatsuya Amano, a Japanese national, challenges on two bases the district court's denial of his motion to suppress certain evidence: (1) that, at the time of his arrest, law enforcement officers failed to notify him of his right under the Consular Convention and Protocol between the United States and Japan (Japan Convention) to contact the Japanese consulate, and (2) that his waiver of *Miranda* rights and his consent to search his apartment were not voluntary. We hold (1) that suppression of evidence is not an appropriate remedy for a violation, if there was one, of the Japan Convention, and (2) that the trial court did not err in concluding that Defendant voluntarily waived his rights and consented to the séarch. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Police officers in Phoenix, Arizona, stopped Defendant after receiving a complaint from a restaurant that he had paid for his food with a counterfeit $20 bill. Before questioning Defendant, Officer Kulesa read the *Miranda* rights to him in English. Defendant, speaking in English with a Japanese accent, said that he understood his rights. Then Kulesa questioned Defendant about his driver's license and the license plate on his car. During that conversation, Defendant told Kulesa that he is from Japan. The officers arrested Defendant when they learned that his driver's license was suspended and that the license plate on his car was stolen. During an inventory of Defendant's car, the lawfulness of which is not at issue here, the officers found $360 in counterfeit bills.

Officers took Defendant to a police precinct, where Special Agent Thurling of the Secret Service questioned him about the manufacture and use of counterfeit currency. Before that questioning began, Thurling advised Defendant again, in English, of the *Miranda* rights. Defendant then signed a standard-form waiver of *Miranda* rights. That form, which is printed in English, said that Defendant understood his rights and was willing to speak to the agent without having a lawyer present. Thereafter, Defendant made oral statements (in English) that he had made and used counterfeit currency and signed a written statement (also in English) to the same effect. Additionally, Defendant signed a form, which was printed in En-

**2.** The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

glish, authorizing a search of his apartment.

Neither Kulesa nor Thurling informed Defendant of a right to contact the Japanese consulate. Neither of them asked Defendant whether he needed an interpreter. Both officers testified, however, that Defendant appeared to have no difficulty understanding and conversing in English. Moreover, Defendant did not request an interpreter at any time during Kulesa's or Thurling's questioning.

After obtaining written consent, the Secret Service searched Defendant's apartment. There they found computer equipment with which Defendant had made counterfeit bills, $13,000 in counterfeit bills, and schedules for making and passing counterfeit bills. Those schedules were written in English. The officers also discovered computer manuals and books written in English, as well as check registers in which notations had been made in English.

Defendant was indicted on two counts: manufacturing counterfeit obligations and uttering counterfeit obligations, in violation of 18 U.S.C. §§ 472 and 474. Defendant filed a motion to suppress his written statement and the evidence found during the search of his apartment. In support of that motion, he attached an affidavit stating that he is a Japanese citizen; that, had he been informed of a right to contact the Japanese consulate, he would have done so, remained silent, and sought the help of a lawyer before speaking with officers; and that he had no familiarity with *Miranda* warnings until his arrest. The affidavit, including its statement that Defendant had read the affidavit and that its contents were true, was written in English. Nothing in the affidavit or elsewhere in the record suggests that Defendant needed an interpreter to understand the affidavit.

The district court held a two-day evidentiary hearing, after which it denied the motion to suppress. Defendant then entered into a plea agreement, under which he agreed to plead guilty to the charge of manufacturing counterfeit obligations, in exchange for which the government agreed to drop the charge of uttering counterfeit obligations. In the agreement Defendant retained the right to appeal the district court's denial of the motion to suppress. The district court sentenced Defendant to 12 months and one day of imprisonment and ordered him to pay restitution to merchants to whom he had passed counterfeit bills. After the court entered judgment, Defendant brought this timely appeal. He challenges only the denial of his motion to suppress.

## STANDARD OF REVIEW

We review de novo the district court's decision whether to suppress evidence, but we review the court's underlying factual findings for clear error. *See United States v. Morning*, 64 F.3d 531, 532 (9th Cir.1995).

The voluntariness of a consent to search is a factual issue that we review for clear error. *See id.*

We review a district court's ruling on a *Miranda* waiver under two standards: Whether the waiver was knowing and intelligent is a question of fact that we review for clear error. Whether the waiver was voluntary is a mixed question of fact and law, which we review de novo. *See United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir.1998).

## JAPAN CONVENTION

In *United States v. Lombera–Camorlinga*, 206 F.3d 882, 885 (9th Cir.2000) (en banc), this court held that the exclusion of evidence is not an appropriate remedy for a violation of any individual rights that might be created by Article 36 of the Vienna Convention on Consular Relations (Vienna Convention). In this case, Defendant asks us to hold that a different rule obtains with respect to Article 16(1) of the Japan Convention and that the failure to

inform him, after arrest and before questioning, of a right to contact the Japanese consulate requires suppression of his written statement and of the evidence seized from his apartment.[3] For the reasons that follow, we hold that the exclusion of evidence is not an appropriate remedy for a violation of any individual rights that might be created by Article 16(1) of the Japan Convention.

Article 16(1) provides:

> The appropriate authorities of the receiving state shall, at the request of any national of the sending state who is confined in prison awaiting trial or is otherwise detained in custody within his consular district, immediately inform a consular officer of the sending state. A consular officer shall be permitted to visit without delay, to converse privately with, and to arrange legal representation for any national of the sending state who is so confined or detained. Any communication from such a national to the consular officer shall be forwarded without undue delay by the authorities of the receiving state.

Consular Convention and Protocol, Mar. 22, 1963, U.S.-Japan, art. 16, 15 U.S.T. 768. The Japan Convention contains no text requiring authorities to notify individual Japanese nationals of a right to contact a consular official. By contrast, Article 36 of the Vienna Convention provides that law enforcement officers who arrest a foreign national "shall inform the person concerned without delay of his rights under this sub-paragraph." Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 59 U.N.T.S. 261. Arguably, the Japan Convention does not require authorities to inform an individual Japanese national of a right to contact a consular official and, thus, there could have been no violation of an individual right of Defendant.

■ Even if the Japan Convention contained an implied right to individual notification, however, exclusion of evidence is not a proper remedy for a violation of that right. The reasoning of *Lombera–Camorlinga* applies equally here. The court rejected application of the exclusionary rule as a remedy for a violation of the Vienna Convention for two reasons. First, application of the exclusionary rule usually is confined to constitutional errors, and a dereliction of duty under a treaty is not necessarily a constitutional error. Second, the State Department enforces treaty obligations, thus diminishing the need for judicial enforcement. *See Lombera–Camorlinga*, 206 F.3d at 886–88. Except for the fact that the Vienna Convention would appear to give more deference to the right of individuals to learn that they can contact their consulates, the Vienna Convention and the Japan Convention generally resemble each other in scope, text, and purpose. That being so, we see no principled basis on which to distinguish *Lombera–Camorlinga*. The district court correctly rejected Defendant's motion to suppress evidence because of an alleged violation of the Japan Convention.

## VOLUNTARINESS OF STATEMENT AND CONSENT TO SEARCH

■ Defendant next argues that his written statement and his consent to search were involuntary because his native language is Japanese, he has limited skills in English, he was advised of his *Miranda* rights only in English, he did not have the assistance of an interpreter, he lacks experience with the criminal justice system in the United States, and he was not informed of a right to contact the Japanese consulate. In a case involving a foreign national, the court should assess voluntariness by examining, among other things, whether the defendant signed a written waiver; whether the advice of rights was

**3.** Japan is a signatory to the Vienna Convention, *see* Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 59 U.N.T.S. 261, but the Japan Convention remains in effect.

in the defendant's native language; whether the defendant appeared to understand those rights; whether the defendant had the assistance of a translator; whether the defendant's rights were explained painstakingly; and whether the defendant had experience with the American criminal justice system. *See United States v. Garibay*, 143 F.3d 534, 538 (9th Cir.1998). The court in all cases must examine the totality of the circumstances. *See id.* at 536–37.

 Here, the district court made a number of key findings of fact, none of which is clearly erroneous. The court found that Defendant had sufficient skills in English to understand his rights, to waive them, and to make a statement against interest. The court relied, among other things, on the testimony of Kulesa and Thurling to the effect that Defendant appeared to understand and converse comfortably in English; on Defendant's submission of an affidavit in English; and on the discovery of a variety of English-language materials in Defendant's home. Further, the court found that Defendant was advised twice of his *Miranda* rights, once by Kulesa and once by Thurling, before being questioned and before signing the consent to search. The district court also found that Defendant's affidavit, in which he claimed that he would have contacted the Japanese consulate had he been informed of a right to do so, was unpersuasive in view of the other evidence, because it was "conclusory, self-serving, and not subject to cross-examination." Because of those underlying findings, the district court's ultimate finding that the consent to search was voluntary is not clearly erroneous.

Under the totality of the circumstances, Defendant's *Miranda* waiver also was voluntary. He was advised of his rights twice, he appeared to understand those rights, and he signed a written waiver. Defendant's understanding of English obviated the need for an advice of rights in Japanese or for an interpreter. In view of the foregoing factors, Defendant's previous lack of contact with the criminal justice system in the United States, and his lack of contact with the Japanese consulate, did not render his waiver involuntary.

AFFIRMED.