Filed 2/29/16  P. v. Avila CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062709 |
| v. | (Super.Ct.No. RIF1400739) |
| ANTONIO AVILA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

A jury convicted defendant and appellant, Antonio Avila, of multiple aggravated sex offenses against his girlfriend's daughter, Jane Doe, when Jane was between the ages of six and 12 years old. Defendant was sentenced to 12 years, plus an indeterminate term of 185 years to life. He appeals, claiming (1) the trial court prejudicially erred in admitting his interview statements to a detective because, under the totality of circumstances, he did not knowingly, intelligently, and voluntarily waive his *Miranda*[1] rights before he spoke with the detective, (2) his due process rights were violated when the trial court permitted a victim advocate to be present during Jane's testimony without a showing of need, and (3) the trial court prejudicially erred in failing to instruct the jury that Jane's text messages to her brother, complaining of the sexual abuse, were introduced for the limited purpose of showing that a complaint had been made, and the circumstances under which it had been made. We reject these claims and affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. *Prosecution Evidence*

1. Jane Doe's Testimony

Defendant began dating Jane's mother when Jane was five years old, and Jane admitted that neither she nor her brothers got along with defendant. Jane claimed that defendant began sexually abusing her when she was about six or seven years of age,

_____

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

before defendant started living with Jane's family. Jane testified that defendant would touch her vaginal area, breasts, and butt with his hands, mouth, and penis. For the next year or two, these acts would take place up to five times a month, and defendant warned Jane that they would both go to jail if she told anyone of these acts. Jane testified that, when she was about eight or nine years old, and after defendant had moved in with Jane's family, defendant began raping her, with the rapes continuing until she was approximately 13 years old. Jane testified that, on at least one occasion, defendant forced her to engage in anal sex. He warned her that she would die if she told anyone.

2. Arturo's Testimony

Jane's older brother Arturo moved back in with the family when Jane was 14 years of age. In November or December 2013, days after Arturo moved back in with the family, defendant left for a monthlong trip to Mexico. Arturo testified that, while defendant was gone, Jane seemed much happier, would have friends over, would not be locked in her room, and was more engaging with her family. However, once defendant returned from his trip, Arturo noticed that Jane never wanted to be home, would not speak with defendant, and was more withdrawn. Arturo confronted Jane about his observations and concerns. A few days later, Jane revealed to Arturo via text message that defendant had sexually abused her from the time she was six years old. A few days later, after Jane's fifteenth birthday, Arturo and another of Jane's brothers reported her allegations to the police. Arturo was unable to show investigators Jane's text messages because he had inadvertently deleted them, but he was able to provide a record showing

3

when he received her messages. Arturo testified that he tried to build a relationship with defendant, but they never had a good connection.

      3.  <u>Defendant's Statements to Police and Apology Letter</u>

After Arturo and his brother reported defendant's alleged sexual assault, defendant was interviewed by Detective Chris Barajas, and a recording of the interview was played for the jury. During the interrogation, defendant admitted that, on no more than two or three occasions, he touched Jane's vagina, put his mouth on Jane's vagina, had sex with Jane, and had Jane touch his penis. He also admitted that he told Jane to keep quiet about these incidents. During the interrogation, defendant claimed that Jane "looked for me," that "she tried to touch me first," and that "she started it." Defendant also wrote a letter of apology to Jane. In that letter, defendant asked Jane to "[f]orgive me for making this mistake, but you were very small. You sought me out. You did not know what you were doing. I beg you to forgive me."

B. *Defense Evidence*

Defendant did not testify at trial and presented no other affirmative evidence. In cross-examining Jane and Arturo, defendant attacked their credibility, implying that she and Arturo fabricated the accusations against defendant because they disliked him.

C. *Verdicts and Sentence*

The jury found defendant guilty of sexual penetration or oral copulation with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b), counts 1-6),[2] rape of a

_____

    **2** All further statutory references are to the Penal Code unless otherwise indicated.

4

child under the age of 14 years by force, violence, duress, menace or fear (§§ 261, subd. (a)(2), (6), 269, subd. (a)(1), counts 7 & 11), sodomy of a child under the age of 14 years by force, violence, duress, menace or fear (§§ 269, subd. (a)(3), 286, subds. (c)(2), (3), (d), count 8), sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a), counts 9-10), and lewd or lascivious act with a child under the age of 14 by force, violence, duress, menace, or fear (§ 288, subd. (b)(1), counts 13-14). After the prosecution presented its case, the court dismissed the second sodomy charge (count 12), based on insufficient evidence, because the prosecution only introduced evidence of one act of sodomy. (§ 1118.1.)

Defendant was sentenced to a determinate term of 12 years, plus an additional indeterminate term of 185 years to life.

### III. DISCUSSION

A. *Defendant's Miranda Waiver Was Knowing, Intelligent, and Voluntary*

Defendant first claims that the trial court prejudicially erred in admitting his interview statements to Detective Barajas, and his "letter of apology" to Jane, because he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights before he spoke to the detective and before he wrote the apology letter. Based on the totality of the circumstances, we conclude that substantial evidence shows defendant's *Miranda* waiver was knowing, intelligent, and voluntary.

5

B. *Relevant Background:  The Suppression Hearing*

The defense moved in limine to suppress defendant's interview statements to Detective Barajas and the letter of apology to Jane, on the ground they were taken in violation of his *Miranda* rights.  In support of its motion, the defense adduced a transcript of the interview which showed that, at the beginning of the interrogation, the detective asked defendant if he understood English.  Defendant replied, "No, not good . . . understand" and "Ah, some—words . . . ."  The detective then read defendant the *Miranda* advisements in English.  When asked whether he understood the *Miranda* advisements, defendant responded, "more or less . . . ."  The detective asked, "Okay. Sorry?," to which defendant again responded, "more or less . . . ."  When the detective clarified that defendant had said "more or less," defendant responded "Yeah."  Defendant then responded to all of the detective's questions in English, including several that were asked in Spanish.  The interrogation lasted between 20 and 40 minutes, and defendant confessed to molesting Jane on several occasions.  At the conclusion of the interview, the detective asked defendant to write a letter of apology to Jane, which defendant wrote in Spanish.

At the motion hearing, defendant argued that he did not knowingly waive his *Miranda* rights because he did not speak English well enough to understand the rights he waived.  Furthermore, he argued that his response of "more or less" should have prompted the detective to confirm that defendant understood and wished to waive his *Miranda* rights.

6

After reviewing the transcript of the interrogation, the court denied defendant's motion, ruling that, based on the totality of circumstances, defendant understood English sufficiently and his *Miranda* waiver was knowing, intelligent, and voluntary. The court acknowledged that the phrase "more or less" was also used in *People v. Cruz* (2008) 44 Cal.4th 636, and that, in that case, the court concluded that the *Miranda* waiver was valid. The court recognized that *Cruz* was "factually distinguishable, because in that case the detective repeated the warning, the *Miranda* warning, to the defendant who said more or less." However, the court stated that defendant's use of the phrase "more or less," "doesn't indicate a lack of understanding. It's kind of an idiomatic phrase in the English language. And in this instance, after reading the entire transcript, it's, again, 20 minutes of English speaking. The defendant has been in this country for 34 years now; since 1980. [¶] The questions are posed in English. The answers are in English. It's a variety of questions with different words being used, and not one time does the defendant ever indicate that he really doesn't understand it." The trial court also stated that "[i]t's clear from the reading of the transcript that he understands and speaks English. And he never indicated that he did not understand his rights, and he continued to respond to each and every question that was asked of him."

C. *Analysis*

In reviewing a trial court's ruling on a motion to suppress based upon a violation of *Miranda*, this court "'"'accept[s] the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence.'"'"

(*People v. Dykes* (2009) 46 Cal.4th 731, 751.) "Ultimately, the question becomes whether the *Miranda* waiver is shown by a preponderance of the evidence to be voluntary, knowing and intelligent under the totality of the circumstances surrounding the interrogation." (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 219.) In making this determination, the court looks at the nature of the interrogation and the circumstances relating to the particular defendant, keeping in mind the particular background, experience, and conduct of the defendant. (*People v. Davis* (2009) 46 Cal.4th 539, 586.) Relevant are factors such as the defendant's education, physical condition, and mental health. (*People v. Williams* (1997) 16 Cal.4th 635, 660.) Even where a defendant has limited skills in English, he or she may knowingly, intelligently, and voluntarily waive his or her *Miranda* rights, provided the totality of the circumstances indicate that he or she understood those rights when they waived them. (*People v. Salcido* (2008) 44 Cal.4th 93, 127-128; *U.S. v. Amano* (9th Cir. 2000) 229 F.3d 801, 804-805.)

Defendant argues, as he did in the trial court, that he did not knowingly waive his *Miranda* rights because he did not speak English well enough to understand his rights, and his response that he "more or less" understood the *Miranda* advisements should have prompted the detective to ensure that defendant understood his rights and wished to waive them. We disagree. Despite his response to Detective Barajas that he "more or less" understood his *Miranda* rights, substantial evidence supports the trial court's determination that defendant understood English well enough to understand his *Miranda* rights, and that he knowingly, intelligently, and voluntarily waived those rights before he

8

spoke with Detective Barajas and wrote the letter of apology to Jane.  As the trial court pointed out, defendant had been in the United States for 34 years, since 1980.  Defendant responded to each of the detective's questions in English, even the questions that were asked in Spanish.  Defendant never once indicated he did not understand what the detective was asking him.  It is clear from the entire record, including the transcript of the interview and the DVD of the interview, which we have also reviewed, that defendant fully understood and knowingly, intelligently, and voluntarily waived his *Miranda* rights before he agreed to speak with the detective.

Defendant relies on *Cruz*, where the defendant was given the *Miranda* advisements, and was asked whether he understood them.  Defendant responded "mas o menos," or "more or less."  The detective then read the defendant his *Miranda* rights a second time.  The defendant indicated after each advisement that he understood the rights he was waiving, and the detective continued the interrogation.  (*People v. Cruz*, *supra*, 44 Cal.4th at p. 666.)  The *Cruz* court concluded that the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights, and observed that "[a] valid waiver need not be of predetermined form, but instead must reflect that the suspect in fact knowingly and voluntarily waived the rights delineated in the *Miranda* decision."  (*People v. Cruz*, *supra*, at p. 667.)  Since "a valid waiver of *Miranda* rights may be express or implied," a defendant's "willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights."  (*Id.* at pp. 667-668.)

9

Defendant argues that *Cruz* is "readily distinguishable," because the investigator in *Cruz* "undertook specific measures," that is, he read the defendant the *Miranda* advisements a second time "to clarify that Cruz did . . . understand his rights." However, as in *Cruz*, we do not consider defendant's statement that he "more or less" understood the *Miranda* advisements, or that his understanding of English was "not good," in isolation. Rather, we look at the totality of the circumstances to determine whether defendant's *Miranda* waiver was knowing, intelligent, and voluntary. And here, for the reasons explained, the totality of the circumstances show that defendant's waiver was knowing, intelligent, and voluntary.

D. *No Showing of Need Was Required for Jane's Nontestifying Victim Advocate*

Before Jane's trial testimony, the prosecution advised the court that Jane "asked for permission to have the victim advocate from the [District Attorney]'s office sit on the stand with her," to which the court replied, "[a]bsolutely." Defense counsel did not object to this request, and the trial court did not hear evidence to determine whether a victim advocate was necessary before it allowed the victim advocate to sit on the stand with Jane.

Defendant contends his due process rights were violated when the trial court failed to require the prosecution to make a showing of necessity, and failed to make a finding of necessity, before permitting the victim advocate to sit with Jane during her testimony. Because defendant did not object or demand that the prosecution make a showing of necessity when the victim advocate accompanied Jane to the witness stand, he has

10

forfeited his claim of error. (*People v. Myles* (2012) 53 Cal.4th 1181, 1214; *People v. Stevens* (2009) 47 Cal.4th 625, 641; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1296-1297; see Evid. Code, § 353, subd. (a) [an objection to the assertedly erroneous admission of evidence must be timely and specific].)  In any event, we find no error or due process violation.

Under section 868.5, a prosecuting witness in a case involving sex crimes, such as those implicated in this case, is entitled to have a support person accompany him or her to the witness stand.  (§ 868.5, subd. (a).)  Section 868.5, subdivision (b) states that "[*i*]*f the* [*support*] *person or persons so chosen are also witnesses*, the prosecution shall present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness.  Upon that showing, the court shall grant the request unless information presented by the defendant or noticed by the court establishes that the support person's attendance during the testimony of the prosecuting witness would pose a substantial risk of influencing or affecting the content of that testimony."  (Italics added.)

In *People v. Johns* (1997) 56 Cal.App.4th 550 [Fourth Dist., Div. Two], this court held that a showing of need is not required when the victim advocate is not a testifying witness.  (*Id.* at pp. 554-555.)  Because the victim advocate here was not a testifying witness, a showing of need was not required.

Additionally, allowing a victim advocate to accompany a testifying witness to the stand does not violate the defendant's due process rights, particularly where nothing in

11

the record suggests that the victim advocate did or said anything in the presence of the jury that might have interjected an influence on the victim-witness or on the jury. (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1078, disapproved on other grounds in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370-1372; *People v. Johns*, *supra*, 56 Cal.App.4th at pp. 554-556.)  Here, nothing in the record suggests the support person did or said anything that may have influenced either Jane or the jury.

Defendant relies on *People v. Adams* (1993) 19 Cal.App.4th 412 and *People v. Chenault* (2014) 227 Cal.App.4th 1503 for the proposition that a showing of need is required prior to allowing a victim advocate to sit with a testifying victim, and that a defendant's due process rights are violated in the absence of a showing of need (*People v. Adams*, *supra*, at pp. 443-444; *People v. Chenault*, *supra*, at p. 1516).  *Adams* is distinguishable because it involved a "support person" who was also a testifying witness. As noted, Jane's support person was not a testifying witness.  (*People v. Johns*, *supra*, 56 Cal.App.4th at pp. 554-555 [showing of need not required unless support person is a testifying witness].)

Moreover, the showing of need required in *Adams* was based on the holding in *Coy v. Iowa* (1988) 487 U.S. 1012, 1021, which required individualized findings of necessity to justify testimony from behind a screen, and in *Maryland v. Craig* (1990) 497 U.S. 836, 855-856, which required a finding of need prior to allowing a minor to testify on a one-way closed circuit television.  *Adams*, like *Coy* and *Maryland*, were based on the defendant's Sixth Amendment right to confront his accusers.  (*People v. Adams*,

12

*supra*, 19 Cal.App.4th at p. 441.)  At least one court has observed that "the dangers addressed in *Adams* and *Maryland v. Craig* are not present [where the victim] testified in person, permitting face-to-face confrontation, and her support person was not a testifying witness."  (*People v. Andrade*, *supra*, 238 Cal.App.4th at p. 1298.)  *Chenault* is also distinguishable because the "support person" at issue in that case was a support dog, whose presence is governed by section 765 of the Evidence Code, not section 868.5 of the Penal Code.  (*People v. Chenault*, *supra*, 227 Cal.App.4th at pp. 1516-1517.)

E.  *The Trial Court Was Not Required to Give a Limiting Instruction, Sua Sponte, Regarding Jane's Text Messages to Arturo*

Defendant moved in limine to have Jane's text messages to her brother Arturo, regarding defendant's molestation of her, excluded on the ground the text messages were too remote in time to fall under the "fresh-complaint doctrine," which permits introduction of hearsay evidence for the limited purpose of showing a complaint was made, along with the circumstances under which the complaint was made.  (*People v. Brown* (1994) 8 Cal.4th 746, 749-750.)  The trial court denied the motion, and both Jane and Arturo testified to the content of the text messages.  Defendant did not request a limiting instruction regarding the jury's use of the text messages at any time, including before or after Jane and Arturo testified.

Prior to submitting the case to the jury, the court went through a list of the requested jury instructions and asked counsel for both parties whether there were objections to any of the proposed instructions.  Defense counsel did not object or request

any changes to CALCRIM No. 303 which, as proposed and read to the jury, stated: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

Defendant concedes the trial court did not have a duty to give a limiting instruction sua sponte. He argues, however, that because the court gave CACLRIM No. 303, it had a duty to instruct the jury sua sponte that Jane's text messages could only be considered for a limited purpose under the "fresh complaint doctrine." Defendant is incorrect.

Under the fresh complaint doctrine, "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*People v. Brown*, *supra*, 8 Cal.4th at pp. 749-750; *People v. Manning* (2008) 165 Cal.App.4th 870, 880 [Fourth Dist., Div. Two].) "The jury may consider the evidence 'for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime. [Citations.]'" (*People v. Manning*, *supra*, at p. 880.)

On request, the trial court must instruct the jury on the limited purpose for which fresh complaint evidence was admitted, but the trial court has no independent duty to give such an instruction in the absence of a request. (*People v. Brown*, *supra*, 8 Cal.4th at

14

p. 757; *People v. Manning*, *supra*, 165 Cal.App.4th at p. 880.) Thus, a defendant who fails to request a limiting instruction forfeits any claim of error on appeal that a limiting instruction should have been given. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1246.) Because defendant did not request a limiting instruction on the jury's use of Jane's text messages to Arturo, he has forfeited his claim that a limiting instruction should have been given.

In any event, the failure to give a limiting instruction was harmless. It was "not reasonably probable a different result would have been reached had such an instruction been given." (*People v. Manning*, *supra*, 165 Cal.App.4th at pp. 880-881.) The failure to give a limiting instruction has been held harmless where the case against the defendant is "virtually airtight." (*People v. Miranda* (1987) 44 Cal.3d 57, 83, disapproved on other grounds in *People v. Marshall* (1990) 50 Cal.3d 907, 933, fn. 4.)

Here, Jane testified in detail that defendant had repeatedly sexually abused her between the ages of six and 12. Defendant confessed to sexually abusing Jane and wrote a letter of apology to Jane. Given this evidence, it is not reasonably probable defendant would have realized a more favorable result had the jury been instructed not to consider Jane's text messages to Arturo for their truth, but only for the limited purpose of showing that Jane complained of the sexual abuse after Arturo questioned her.

## IV. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                    P. J.

We concur:

McKINSTER
                    J.

MILLER
                    J.