UNITED STATES of America,
Plaintiff–Appellee,

v.

Remigio CHAN–JIMENEZ,
Defendant–Appellant.

No. 96–10482.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1997.

Decided Oct. 1, 1997.

Joel C. Parris, Assistant Federal Public Defender, Tucson, Arizona, for defendant-appellant.

Virginia C. Kelly, Assistant United States Attorney, Tucson, Arizona, for plaintiff-appellee.

Before: FLETCHER, BOOCHEVER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Remigio Chan–Jimenez appeals the district court's denial of his motion to suppress evidence that he alleges was obtained in violation of the Fourth Amendment. He argues that he was seized without reasonable suspicion and that his consent to the search of his truck was not freely and voluntarily made. We agree and reverse his conviction for conspiracy to possess and possession with intent to distribute marijuana under 21 U.S.C. §§ 841(a)(1) & 846 (1994).

## I. BACKGROUND

The underlying facts are as follows: on October 26, 1995, Officer Raymond Price of the Tohono O'odham Police Department was driving an unmarked pickup truck westbound on Arizona State Route 86. At approximately 2:30 p.m. he observed the defendant's truck traveling eastbound. The truck was dusty and had a tarp covering the cargo bed. According to Officer Price, the truck "didn't appear to belong in the area," even though the driver of the truck was traveling within the posted speed limit, did not commit any traffic violations, and neither trucks nor dusty vehicles are unusual in that area of the Arizona desert. Nevertheless, Officer Price turned around and followed the truck. He also ran a check on the truck's license plates because he "felt that this vehicle may contain contraband." Through the check, Officer Price verified that the truck was registered to Remigio Chan at an address in Florence, Arizona.

After Officer Price followed the truck for a mile and a half, Chan–Jimenez pulled over to the side of the road. Chan–Jimenez and his passenger got out of the car and raised the hood of the pickup truck. Officer Price pulled over behind the truck and activated his emergency light to indicate that he was a police officer; he then got out of his truck and identified himself as such.[1]

Officer Price requested Chan–Jimenez's driver's license, which Chan–Jimenez handed him. He asked Chan–Jimenez who owned the truck, and Chan–Jimenez responded that it was his. Officer Price then requested the vehicle registration documents, received them from Chan–Jimenez, and confirmed that the registration and license were "in order." He did not, however, inquire as to whether Chan–Jimenez was experiencing any problems with the truck; nor did he return the driver's license or the registration documents to Chan–Jimenez. Instead, Officer Price asked whether he could conduct a search and look in the bed of the truck. Officer Price had his hand on his revolver at the time, did not inform Chan–Jimenez that he could to refuse to consent, and did not offer to return the papers. Chan–Jimenez gave no verbal response, but "mov[ed] to the rear of the truck and rais[ed] the tarp." Officer Price observed a white sack containing what he believed to be marijuana. Immediately, he drew his gun and yelled "hands up" in Spanish. Chan–Jimenez and his passenger fled on foot into the desert. Both were apprehended a few hours later. Approximately 245 pounds of marijuana was seized from the truck.

A grand jury returned a two-count indictment charging Chan–Jimenez with conspiracy to possess and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) & 846. Prior to trial, Chan–Jimenez filed a motion to suppress evidence obtained pursuant to an unconstitutional detention and search. Although the district court determined that there was no reasonable or founded suspicion that would justify a stop, it found that no seizure occurred within the meaning of the Fourth Amendment. The

---

**1.** Officer Price was not wearing a uniform; instead, he was wearing a T-shirt, camouflage pants, and a belt that held his gun, an extra ammunition magazine, and his police badge.

district court concluded that Officer Price "merely approached what looked to be a disabled vehicle and questioned the driver concerning his license and registration." Additionally, the court found that Officer Price was not coercive in his questioning and simply "made a request to look under the covered pick-up bed," a request that Chan–Jimenez honored. Therefore, the district court denied the motion to suppress. Chan–Jimenez appeals his conviction on the ground that the district court should have suppressed the evidence.[2]

## II. SEIZURE

We begin with the question whether the encounter between Officer Price and Chan–Jimenez constituted a seizure. Because this is a mixed question of law and fact, we review the district court's determination de novo. *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir.1994). For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). A police officer has restrained the liberty of the citizen if, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* at 437, 111 S.Ct. at 2387 (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991)).

We find that Chan–Jimenez was seized within the meaning of the Fourth Amendment when Officer Price obtained and failed to return his driver's license and registration, and proceeded with an investigation. When a law enforcement official retains control of a person's identification papers, such as vehicle registration documents or a driver's license, longer than necessary to ascertain that everything is in order, and initiates further inquiry while holding on to the needed papers, a reasonable person would not feel free to depart.

We must take into account all of the circumstances surrounding the encounter. *Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387–88. In this case, Chan–Jimenez stopped at the edge of a desert highway and stood in front of his truck. The hood of his truck was open and the engine was running. Officer Price pulled immediately behind the truck and activated his emergency lights. Chan–Jimenez walked toward Officer Price, who had his hand on his revolver, where he kept it throughout the entire encounter. Officer Price never inquired whether Chan–Jimenez was having trouble with his vehicle; instead he asked to see Chan–Jimenez's papers and, after determining that they were in order, held on to them and asked for permission to search the truck. The officer's actions made it clear that he had not simply stopped out of concern over the plight of a stranded motorist.

After Officer Price examined Chan–Jimenez's driver's license and vehicle registration, and found nothing out of order, he nonetheless retained possession of these documents. By doing so, he manifested an intent to restrain Chan–Jimenez's freedom—Chan–Jimenez could not lawfully drive away without the documents. Moreover, Officer Price kept his hand on his revolver—possibly a desirable safety measure, but one that also let Chan–Jimenez know that there could be adverse consequences for any failure to submit to authority. A reasonable person in Chan–Jimenez's position would not have felt free to leave or to ignore the officer's presence and go about his business. Thus, we find that Chan–Jimenez was seized without reasonable suspicion in violation of the Fourth Amendment.

## III. CONSENT

Notwithstanding the illegality of the seizure, the search of Chan–Jimenez's truck might, under some circumstances, be justified as a search pursuant to a valid consent. It was apparently on this ground that the district court upheld the propriety of the search. We do not disturb a district

---

**2.** The parties do not dispute the district court's finding that no reasonable suspicion existed to justify a stop of Chan–Jimenez's car.

court's determination that a person's consent to search was voluntary unless that determination was clearly erroneous. *United States v. Koshnevis,* 979 F.2d 691, 694 (9th Cir. 1992). In most cases involving the issue of voluntariness, the district court's decision rests primarily on an assessment of the relevant facts. In this case, however, the district court based its voluntariness determination in large part on an erroneous legal conclusion that no seizure had occurred. While the district court's error on this issue does not change our standard of review, it nevertheless strongly influences our resolution of the case. Our holding that Chan–Jimenez had been seized, in combination with the other considerations we must take into account, leads us to the conclusion that the district court clearly erred in upholding the search on the basis of Chan–Jimenez's consent.

▇▇▇ In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Whether consent to search was voluntarily given or not is "to be determined from the totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2048. In *United States v. Welch,* 4 F.3d 761, 763 (9th Cir.1993), we identified several factors to be considered in determining whether consent to search was voluntary. Among the factors that tend to show a lack of voluntariness are: (1) the person was in custody; (2) the officer had his weapon drawn; (3) the officer failed to administer *Miranda* warnings; (4) the officer did not inform the person of his right to refuse to consent; and (5) the person was told that a search warrant could be obtained.[3]

In this case, the relevant considerations overwhelmingly favor the finding that Chan–

Jimenez did not voluntarily consent to a search of his truck. Chan–Jimenez had been seized. Officer Price did not administer *Miranda* warnings, nor did he inform Chan–Jimenez of his right to refuse to consent. In addition, the officer kept his hand on his revolver at all times.

The government makes much of the fact that Officer Price did not have his weapon drawn when Chan–Jimenez consented to the search of his truck. *See United States v. Perez,* 644 F.2d 1299 (9th Cir.1981) (holding consent involuntary where customs agents approached defendants with drawn weapons). Drawing a weapon is certainly an unequivocal show of authority by a police officer. It is not, however, the only way a law enforcement officer can use a weapon to convey his authority. We agree with Chan–Jimenez that Officer Price's request for permission to search the truck with one hand resting on his gun was implicitly coercive. An officer's keeping his hand on his weapon throughout a colloquy with a suspect is clearly distinguishable from our decisions finding voluntary consent where an officer simply possessed a weapon. *See, e.g., United States v. Morning,* 64 F.3d 531, 533 (9th Cir.1995) (upholding finding of voluntariness in light of fact that "the officers did not unholster their guns"); *United States v. Kim,* 25 F.3d 1426, 1432 (9th Cir.1994) (upholding voluntariness finding in view of fact that officers had their "guns holstered and concealed"). In these cases, the officer's gun was holstered or hidden (or both), and the officer made no use, either implicitly or explicitly, of the weapon's presence. Combined with the fact that the incident took place on a desert highway, with nobody else in sight, Officer Price's actions would have been viewed by a reasonable person essentially as a command to allow a search of the truck. *Compare Kim,* 25 F.3d

---

**3.** Although the presence or absence of one of these factors is not dispositive of the voluntariness inquiry in any given case, many of this court's decisions upholding consent as voluntary are supported by at least several of the factors. *See, e.g., United States v. Morning,* 64 F.3d 531, 533 (9th Cir.1995) (determining that the defendant's consent to search was voluntarily made where the defendant was not under arrest, the police officers did not engage in any coercive behavior, and the defendant signed a written consent form), *cert. denied,* —— U.S. ——, 116

S.Ct. 1030, 134 L.Ed.2d 108 (1996); *United States v. Perez,* 37 F.3d 510, 515 (9th Cir.1994) (finding consent to search voluntary in light of the fact that the defendant was not being detained and had signed a written consent form that specifically advised him of his right to refuse consent); *United States v. Childs,* 944 F.2d 491, 496 (9th Cir.1991) (upholding a search based on voluntary consent when the defendant was advised of his *Miranda* rights, was told of his right to refuse consent, and signed a written consent form).

at 1432 (emphasizing the setting of the encounter and the presence of observers in upholding a search based on voluntary consent).

Chan-Jimenez's failure to respond verbally to the officer's request further supports the conclusion that he did not voluntarily consent to a search of his vehicle. Instead, he silently and slowly unfastened the velcro that attached the tarp to the truck. A person's obedience to a show of authority is by itself insufficient to establish voluntary consent. *See United States v. Spires,* 3 F.3d 1234, 1237 (9th Cir.1993). Although consent can be inferred from nonverbal actions, the government must show that consent was "unequivocal and specific" and "freely and intelligently given." *United States v. Shaibu,* 920 F.2d 1423, 1426 (9th Cir.) (citing *United States v. Page,* 302 F.2d 81, 83–84 (9th Cir. 1962)), *amended by* 912 F.2d 1193 (9th Cir. 1990). It simply failed to do so here.

## IV. CONCLUSION

Officer Price's search of Chan–Jimenez's truck was not supported by either probable cause or a valid consent. The fruits of the illegal search should have been excluded, and the district court therefore erred in denying the motion to suppress.

REVERSED and REMANDED.