**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

KEITH RUSSELL,
            *Defendant-Appellant.*

No. 11-30030

D.C. No.
2:10-cr-00264-
MJP-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted
December 5, 2011—Seattle, Washington

Filed January 5, 2012

Before: A. Wallace Tashima, M. Margaret McKeown, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge McKeown

**COUNSEL**

Jennifer E. Wellman, Vicki W. W. Lai, FPDWA – FEDERAL PUBLIC DEFENDER'S OFFICE, Seattle, Washington, for the defendant-appellant.

Jenny A. Durkan, Sunni Y. Ko, USTA – OFFICE OF THE U.S. ATTORNEY, Tacoma, Washington, for the plaintiff-appellee.

**OPINION**

McKEOWN, Circuit Judge:

This case presents an issue of first impression in this circuit as to the scope of a voluntary consent to search at an airport. Keith Russell appeals from the district court's denial of his motion to suppress 700 Oxycodone pills found in his underwear after a warrantless search by officers in the Seattle-Tacoma International Airport. We conclude that Russell voluntarily consented to a search of his person, and that the arresting officer's full-body pat-down, including the groin area outside Russell's pants, was reasonable and did not exceed his consent. We affirm the district court's denial of the motion to suppress the pills as evidence.

BACKGROUND

This fact-intensive appeal centers on the details surrounding Russell's arrest and search. The suppression hearing included testimony from Russell and three law enforcement officers. The district court credited the version of events narrated by the officers over that by Russell.[1]

---

[1]We review de novo the district court's ruling on a motion to suppress. *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004). The court's factual findings are reviewed for clear error, *United States v. Bynum*, 362 F.3d 574, 578 (9th Cir. 2003), as is the determination whether a search was within the scope of consent. *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1131 (9th Cir. 2005).

Officer Matt Bruch is a Port of Seattle Police Officer assigned as a task force officer with the Drug Enforcement Administration group at the Seattle-Tacoma International Airport. On August 12, 2010, Bruch received a phone call from an Alaska Airlines ticket agent reporting that Russell, described as a black male wearing a leather jacket and a large necklace, had paid cash for a last-minute, one-way ticket to Anchorage, Alaska. The Alaska Airlines agent also reported that Russell was traveling alone and did not check any luggage. In light of these circumstances, Bruch was suspicious that Russell might be a drug courier. Bruch, together with an assisting officer, proceeded to the departure gate for Russell's flight. En route to the gate, Bruch learned that Russell had prior drug and firearm-related convictions, and had also been implicated in a prior drug investigation in Alaska.

Once he approached Russell, Bruch displayed his badge and identified himself as a police officer investigating narcotics. Bruch told Russell that he was "free to go and he wasn't under arrest[.]" Bruch asked Russell for permission to search his bag and his person; Russell consented. After taking possession of Russell's bag and handing it to the assisting officer to search, Bruch asked for permission to search Russell a second time. Russell again consented verbally and spread his arms and legs to facilitate the search.

Russell was wearing baggy pants. Bruch testified that he searched Russell beginning from the ankles and working his way up, using his "standard operating procedure" for a frisk. He squeezed the shin, knee and thigh. When Bruch reached into Russell's groin area he "lifted up to feel." After feeling something hard and unnatural, Bruch arrested Russell. The entire search occurred outside the clothing; Bruch never patted or reached inside the pants.

The district court found that "it was reasonable for the officer to assume that all the areas where narcotics could be secreted could be touched" outside the clothing. The court

further found that Russell had the option of telling the officers he did not want to speak, or turning away from them. The court denied Russell's motion to suppress evidence from the search.

## ANALYSIS

### I. RUSSELL VOLUNTARILY CONSENTED TO A PAT-DOWN SEARCH

[1] It is well-established that consent is a recognized exception to the Fourth Amendment's protection against unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347, 358 n.22 (1967) ("A search to which an individual consents meets Fourth Amendment requirements."). Nonetheless, it is the government's burden to show consent was given "freely and voluntarily." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997) (citing *Schneckloth v. Busta-monte*, 412 U.S. 218, 222 (1973)). We have identified five factors to be considered in determining the voluntariness of consent to a search:

> (1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained. The fact that some of these factors are not established does not automatically mean that consent was not voluntary.

*United States v. Morning*, 64 F.3d 531, 533 (9th Cir. 1995) (quoting *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988)). Application of these factors leads us to affirm the district court's determination that Russell's consent was voluntary.

[2] To begin, Russell was not in custody when the search occurred, nor did the officers have their guns drawn, or even

visible at any point during the encounter with Russell. The third factor, *Miranda* warnings, does not bear on this case because Russell was not under arrest at the time of the searches and once he was arrested, the warnings were provided. "It would . . . make little sense to require that *Miranda* warnings. . . be given by police before requesting consent." *United States v. Vongxay*, 594 F.3d 1111, 1120 (9th Cir. 2010) (quoting *United States v. Ritter,* 752 F.2d 435, 438 (9th Cir. 1985)). It bears noting that in *Chan-Jimenez* the *Miranda* warnings were pertinent because the defendant had already been seized. 125 F.3d at 1326. The fourth factor is either neutral or slightly favors Russell: he was *not* told that he could refuse to consent. However, the district court found that the officers told Russell he was free to leave, which is an instructive, but certainly less clear, way of saying that consent could be refused. In any event, consent to a search is not necessarily involuntary simply because officers failed to provide notice of the right to refuse. *United States v. Cormier*, 220 F.3d 1103, 1113 (9th Cir. 2000). Finally, the officers did not tell Russell that they could obtain a search warrant if he refused to consent. The district court's finding that Russell affirmatively consented to the search, coupled with consideration of this five-part inquiry, supports the district court's conclusion that the consent was free and voluntary. There was no error, let alone clear error, in this determination.

## II. THE SCOPE OF THE PAT-DOWN SEARCH WAS REASONABLE

[3] Any search, even a consensual one, is constrained by the bounds of reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The question here is whether a request to conduct a search of the person for narcotics reasonably includes the groin area. In other words, when Russell consented to a search of his person, was it reasonable for Bruch to assume the consent included the groin area? The scope of consent is benchmarked against an "objective reasonableness" test. *Id.* at 252.

**[4]** The factual context is key to our decision. Bruch specifically advised Russell that he was looking for narcotics. After consenting to the search, Russell was more than cooperative. To facilitate the search, he lifted his arms to shoulder height and spread his legs. Russell could have objected either of the two times he gave verbal consent before the search, or while Bruch worked his way up from the ankles to the groin. *See, e.g.*, *United States v. Sanders*, 424 F.3d 768, 776 (8th Cir. 2005) (granting a motion to suppress where the suspect consented to a search of his person but then withdrew consent by actively shielding his groin area from the officer's search). Indeed, Bruch purposely searched from the ankles up because "it gives them an opportunity to say that they don't want the search . . . there is an opportunity to stop." Instead Russell said nothing and certainly did nothing to manifest any change of heart about his consent to search. He never objected, expressed any concern, nor did he revoke consent or call a halt to the search, nor did he complain to the officer after the fact.

**[5]** We hold that the search was reasonable. Narcotics are often hidden on the body in locations that make discovery more difficult, including the groin area.[2] The search here did not extend inside the clothing. Finally, this case does not present a question of a body pat-down by an officer of the opposite gender. *See, e.g.*, *Hudson v. Hall*, 231 F.3d 1289, 1298 (11th Cir. 2000) (noting as a significant factor that the searching officer was the same gender as the suspect); *United States v. Rodney*, 956 F.2d 295, 298 n.3 (D.C. Cir. 1992) ("In particular, we do not address situations where, unlike here, the officer and the suspect are of opposite sexes."). Not only would a reasonable person in Bruch's situation understand that the

---

[2]Bruch testified that the groin is "a very common area for narcotics or weapons . . . to be hidden. . . . [O]ut of all my investigations where I find narcotics, at least probably 80 percent of the narcotics I find are in the groin area." This fact is also widely recognized by our sister circuits. *See, e.g.*, *Rodney*, 956 F.2d at 297 (citing cases).

general consent for a narcotics search of the person included a pat-down of all areas of the body, including the groin area, Russell's unrestricted consent to the search and conduct during the search suggested nothing different.

The Supreme Court has long recognized that searching a suspect's person may consist of "a careful exploration of the outer surfaces of a person's clothing all over his or her body." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). In *Terry* the Court cited the following as an "apt description" of an officer field-search: "The officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, *the groin and area about the testicles,* and entire surface of the legs down to the feet." *Id.* at 17 n.13 (emphasis added) (quoting L. L. Priar & T. F. Martin, *Searching and Disarming Criminals*, 45 J. Crim. L. Criminology & Police Sci. 481, 481 (1954)). Although *Terry* focused on weapons searches where officer safety considerations are paramount, *id.* at 27, the Court's reference to the scope of a search of the person is instructive.

Two other circuits previously addressed the groin issue and held that a search of the groin in the context of drug investigations falls within a general consent to a search of the person; we agree. The D.C. Circuit in *Rodney* concluded that a groin search is within a general consent to search the person for drugs. *Rodney*, 956 F.2d at 298. Justice Thomas, sitting by special designation and joined by then-Judge Ginsburg over a dissent, wrote, "a request to conduct a body search for drugs reasonably includes a request to conduct some search of that [groin] area." *Id. See also United States v. Ashley*, 37 F.3d 678 (D.C. Cir. 1994) (upholding a groin search as falling within the bounds set by *Rodney*); *United States v. Broxton*, 926 F.2d 1180 (D.C. Cir. 1991) (per curiam) (upholding as consensual a drug search including the crotch area). The Eleventh Circuit was presented with a similar issue in a qualified immunity appeal. The court held that "a brief and discreet

look into the pants of a suspect by an officer of the same sex during a search for drugs and for weapons" was within the scope of a general consent to a pat-down search. *Hudson*, 231 F.3d at 1298.

**[6]** Russell's reliance on an earlier Eleventh Circuit case is misplaced. In *United States v. Blake*, the court affirmed a district court's determination that "the consent given by the defendants allowing the officers to search their 'persons' could not, *under the circumstances*, be construed as an authorization for the officers to touch their genitals in the middle of a public area." 888 F.2d 795, 800 (11th Cir. 1989) (emphasis added). However, *Blake* presented significantly different facts than we consider here. The officers in *Blake* stopped and searched the defendants at random, and immediately searched their groin. Not so here where Bruch had concrete information that led him to seek out Russell, and then methodically worked his way up Russell's legs before searching the groin. This distinction is crucial—the extra time gave Russell an opportunity to withdraw or limit his consent. Bruch also testified that it would be "intrusive and embarrassing" and "[not] good," to simply walk up and grab the genital area without cause. Another crucial distinction is that the standards of review in *Blake* and this case are both clear error for factual determinations, *id.* at 802, while the findings of the district courts are inverted. In *Blake*, the Eleventh Circuit affirmed the district court's determination as not being clearly erroneous. We do the same here.

Three other circuits have upheld searches of the groin area in similar factual contexts but in cases that did not present a Fourth Amendment scope of consent issue. In *United States v. Wilson*, a deputy sheriff observed a passenger coming off a commuter flight behaving suspiciously. 895 F.2d 168, 170 (4th Cir. 1990). The deputy asked "if he could search his person, and, without making an oral response, [the suspect] simply shrugged his shoulders and extended his arms. [The deputy] felt a very hard substance in [the suspect's] groin

area." *Id.* On these facts, the Fourth Circuit affirmed the conviction and the upheld the admissibility of the drug evidence. Similarly, the Sixth Circuit upheld the validity of a drug search which included the defendant's groin area, holding that the arresting officers had a reasonable and articulable suspicion legitimating the search. *United States v. Winfrey*, 915 F.2d 212, 216-18 (6th Cir. 1990). Finally, the Fifth Circuit upheld the conviction of a drug courier who voluntarily consented to a search that revealed drugs hidden in his underwear. *United States v. Bowles*, 625 F.2d 526, 529 (5th Cir. 1980).

In contrast, and not surprisingly, in the case where consent was withdrawn, or restricted, the Eighth Circuit considered the reasonableness of the search against the scope of consent. Where the suspect had given consent to a search of his person but then withdrew consent by actively shielding his groin area from the officer's search, the Eighth Circuit held the search invalid. *Sanders*, 424 F.3d at 776. Here, too, Russell could have similarly withdrawn or limited his consent at any stage of the search, but he did not do so.

**[7]** We conclude that Russell voluntarily consented to a search of the person, encompassing a full-body frisk, including the groin area. We uphold the district court's denial of Russell's motion to suppress.

**AFFIRMED.**