**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>OMAR ENRIQUE NAVA-MAYTOREL,<br><br>Defendant-Appellant. | No. 15-50213<br><br>D.C. No. 3:14-cr-02735-LAB<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted August 29, 2016
Pasadena, California

Before:  TASHIMA, SILVERMAN, and WATFORD, Circuit Judges.

Omar Enrique Nava-Maytorel appeals the district court's denial of his

motions to suppress particular evidence and statements, and challenges the 72-

month sentence imposed following his bench-trial conviction for possession of

methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1),

_____

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and aiding and abetting, in violation of 18 U.S.C. § 2. We have jurisdiction under 28 U.S.C. § 1291. We affirm the conviction, but remand for resentencing.

Nava-Maytorel contends that he was unlawfully seized during his encounter with Border Patrol agents and, therefore, the district court erred by failing to suppress the evidence obtained during the subsequent search of his vehicle. We review de novo the district court's ruling on a motion to suppress. *See United States v. Evans*, 786 F.3d 779, 784 (9th Cir. 2015). Contrary to Nava-Maytorel's contention, the record reflects that the district court concluded that the approximately five-minute encounter was an investigative seizure supported by adequate suspicion. We agree.

At the suppression hearing, the district court credited testimony from Border Patrol agents regarding the observations that led them to initiate the encounter with Nava-Maytorel. Specifically, the agents testified that Nava-Maytorel abruptly changed lanes upon passing a marked Border Patrol vehicle, and then pulled into a rest stop that the agents believed was a common staging area for smugglers. The agents further testified that Nava-Maytorel's passenger appeared inordinately concerned about the presence of Border Patrol at the rest stop, and that, after parking and exiting his vehicle, Nava-Maytorel "flashed" his immigration papers and stretched in a manner that appeared exaggerated. Finally, the agents testified

2

that a records check indicated that Nava-Maytorel's vehicle had crossed over from Mexico earlier that day.

We assume, without deciding, that Nava-Maytorel was seized when, during the course of the encounter, an agent obtained and failed to return his immigration documents. *See United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). However, giving due weight to the inferences drawn by the Border Patrol agents, *see Evans*, 786 F.3d at 788, and recognizing that "sometimes conduct that may be entirely innocuous when viewed in isolation may properly be considered in arriving at a determination that reasonable suspicion exists," *see United States v. Montero-Camargo*, 208 F.3d 1122, 1130 (9th Cir. 2000), we conclude that the district court correctly found that the approximately five-minute encounter was a permissible investigative seizure based on "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.' " *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (*quoting Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

Nava-Maytorel next contends that, even if the initial encounter was lawful, the district court should have suppressed the evidence because his subsequent consent to a search of his vehicle was involuntary. We review for clear error the district court's determination that a defendant voluntarily consented to a search. *See United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007). Whether consent is

3

voluntary is a determination that we must make by evaluating the totality of the circumstances, and by looking to several factors. *See United States v. Patayan Soriano*, 361 F.3d 494, 502-03 (9th Cir. 2004). Here, though Nava-Maytorel was not advised that he could refuse consent, the remainder of the relevant factors indicate that his consent was voluntary. Nava-Maytorel was not in custody, and *Miranda* warnings were not required. *See United States v. Basher*, 629 F.3d 1161, 1168 (9th Cir. 2011) (for purposes of a voluntariness analysis, defendant subject to a *Terry* stop is not in custody and whether *Miranda* warnings were given is "inapposite"). It is undisputed that the agents did not draw their weapons. Finally, the agents did not suggest that failure to give consent "would be futile because the officers could obtain a search warrant if they so desired." *See Washington*, 490 F.3d at 776. Under these circumstances, the district court did not clearly err in determining that Nava-Maytorel's consent was given voluntarily. *See United States v. Perez-Lopez*, 348 F.3d 839, 845 (9th Cir. 2003).

Nava-Maytorel next contends that the district court erred by denying his motion to suppress his post-arrest statements on the basis that they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). We review de novo the adequacy of a *Miranda* warning. *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006). To the extent that Nava-Maytorel argues that his Spanish-language

4

*Miranda* advisement was inadequate because the translation was ambiguous, this claim is waived. *See United States v. Olano*, 507 U.S. 725, 733 (1993). The record reflects that Nava-Maytorel was advised that, if he could not pay for the services of an attorney, one would be appointed for him. The parties agree that Nava-Maytorel asked whether it was "necessary" to have an attorney present, and that the admonishing agent responded that it was Nava-Maytorel's "right," but it was "not necessary." Like the district court, we reject Nava-Maytorel's contention that this response was ambiguous or misleading. To the contrary, the record reflects that the *Miranda* advisement was adequate. *See Miranda,* 384 U.S. at 479.

Finally, Nava-Maytorel contends that the district court erred by denying his request for a minor role adjustment under U.S.S.G. § 3B1.2. The district court did not fully consider the recent amendment to the Guidelines governing minor role adjustments, or have the benefit of our recent decision that the amendment applies retroactively to direct appeals. *See United States v. Quintero-Leyva*, 823 F.3d 519, 524 (9th Cir. 2016). Accordingly, we vacate the sentence and remand for resentencing so that the district court may consider Nava-Maytorel's request for a minor role reduction in light of the amended Guidelines. *See id*.

**VACATED in part, and REMANDED for resentencing.**

*United States v. Nava-Maytorel*, No. 15-50213

WATFORD, Circuit Judge, dissenting:

The officers had reasonable suspicion to stop and question Nava-Maytorel, but I don't think his consent to search the car was voluntarily given.

We apply a five-factor test when determining whether consent was voluntary, and here as in *United States v. Washington*, 490 F.3d 765 (9th Cir. 2007), two of the factors favor the defendant, two favor the government, and one is inapplicable. As in *Washington*, Nava-Maytorel had been seized for Fourth Amendment purposes when the officers asked for consent, and the officers never informed Nava-Maytorel that he had the right not to consent. (Nava-Maytorel had been seized because the officers obtained and did not return his immigration papers; in similar circumstances, we have held that a reasonable person would not feel free to terminate the encounter and leave. *See id.* at 775; *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997).) These two factors favor Nava-Maytorel. In the government's favor, the officers did not have their guns drawn, and they did not tell Nava-Maytorel that they could obtain a search warrant if he refused to consent. The last of the five factors—whether the officers gave *Miranda* warnings—is not applicable here. *See Washington*, 490 F.3d at 776.

In *Washington*, we held that the defendant's consent was involuntary. Sure, there are differences between this case and *Washington* in terms of the ancillary

facts, but as far as the five factors go there is no difference at all.  Under *Washington*, I think the district court clearly erred in finding that Nava-Maytorel's consent was voluntarily given.