Filed 3/20/24  P. v. Isais CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062109 |
| v. | (Super. Ct. No. 22CF0425) |
| JESSE GARCIA ISAIS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King and Cheri T. Pham, Judges.  Affirmed.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

After the trial court denied his motion to suppress evidence obtained in a warrantless search, Jesse Garcia Isais pled guilty to possession of fentanyl for sale, sale/transportation of fentanyl for sale, possession of methamphetamine for sale, and sale/transportation of methamphetamine for sale. He now appeals from the judgment of conviction, claiming the court erred when it denied his motion to suppress. Given the totality of the circumstances of Isais's encounter with the police, we find the court did not err in denying the motion to suppress and affirm the judgment.

FACTS AND PROCEDURAL HISTORY

On February 17, 2022, at approximately 10:35 a.m., Santa Ana Police Officer Duarte and Deputy Probation Officer Rollon entered a parking lot in Santa Ana in a marked police car.[1] A gray Nissan was parked in the west side of the lot. There were no other vehicles near the Nissan, but a man was standing outside the driver's window. When the man saw the police car enter the parking lot, he began to walk away. Based on his experience, Officer Duarte recognized the man's "distancing of himself" from the Nissan upon seeing the officers as behavior consistent with a potential narcotics sale. Officer Duarte had 10 years of experience as a police officer and had made over a dozen narcotics arrests and participated in more than a hundred investigations involving narcotics sales. He had patrolled the area before and understood it was adjacent to a high narcotics traffic area.

Officer Duarte believed the Nissan was occupied, and he confirmed that belief by circling the police car around the Nissan. He then parked the police car a short distance behind the Nissan. Officer Duarte did not block the Nissan with the patrol car or in any way impede the Nissan's ability to pull away simply by moving forward.

---

[1] The description of the facts of Isais's encounter with the officers is taken from the reporter's transcript of the suppression hearing and a videotape of the encounter, which was captured on Officer Duarte's body camera and introduced into evidence at the hearing on the suppression motion.

Throughout the encounter, the Nissan had an unobstructed exit path.  Officer Duarte did not activate his patrol car's lights or sirens or shine either a flashlight or a search light into or on the Nissan.

Officer Duarte got out of his car and approached the Nissan, which was occupied by three passengers, two in the front seat and one in the back seat behind the driver.  He stood outside the window of the passenger seat behind the driver.  Without having been asked to do so, the driver's side passenger rolled the window down part way.  Officer Duarte said, "What's up man?  You alright?" and then asked the passenger if he was still on probation.  The passenger said he was not.  After asking, "You sure?" Officer Duarte asked the passenger to roll the window a little further down and said, "What are you guys up to?"  After making a lighthearted remark about "just eating cocoa puffs," Officer Duarte again asked the passenger if he had cleared his probation.  When the passenger responded in the affirmative, Officer Duarte then asked Isais, the driver, "What about you, bud?"  Isais responded he was on a "109" probation.  After asking Isais for the name of his probation officer, Officer Duarte, who was still standing outside the driver's side passenger door, told the passenger to "stop moving around" and instructed Isais to put his hands on the steering wheel.  Isais complied, and Officer Duarte responded, "thanks buddy."  At this point, over a minute had elapsed since Officer Duarte exited his vehicle.  A subsequent warrantless search of the Nissan revealed fentanyl, methamphetamine, and a cell phone with text exchanges regarding drugs.

During Officer Duarte's verbal exchanges with Isais and the other passenger, Officer Rollon was standing to the back right side of the Nissan.  He did not direct any comments or questions to the passengers.  Throughout the exchange with the occupants of the Nissan, Officer Duarte's tone and demeanor were calm.  He did not raise his voice or speak harshly.  Neither Officer Duarte nor Officer Rollon unholstered their

3

service weapons or brandished them at any time. Neither officer threatened to draw their weapons.

Isais was charged with violating Health and Safety Code sections 11351 (possession of a controlled substance [fentanyl] for sale; count 1), 11352, subdivision (a) (sale/transportation for sale of a controlled substance [fentanyl]; count 2), 11378 (possession of a controlled substance [methamphetamine] for sale; count 3), and 11379, subdivision (a) (sale/transportation for sale of a controlled substance [methamphetamine]; count 4).

Following a preliminary hearing, Isais filed a motion to suppress the evidence seized from the Nissan, claiming he was unlawfully detained and the search of the car violated his rights under the Fourth Amendment to the United States Constitution and the California Constitution, article I, sections 1 and 13. The trial court conducted an evidentiary hearing on the motion, at which only Officer Duarte testified. At the hearing, the People acknowledged that once Officer Duarte instructed Isais to put his hands on the steering wheel, a detention occurred because at that juncture "[Isais's] freedom had been limited in some way." Thus, the parties agreed the question presented by the motion was whether a detention occurred prior to that instruction. Following the hearing, the court denied the motion to suppress.

Isais then pleaded guilty to all counts and was sentenced to two years on count 1, two years on count 3, and two years on count 4, all to be served concurrently. He now appeals the ruling on the motion to suppress.

DISCUSSION

"'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining

4

whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.'" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)

Isais argues the search of his car and seizure of evidence from it violated the prohibition of unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution and article I, section 13 of the California Constitution. Isais contends that, from the very beginning of the encounter, "the officers' shows of authority would cause a reasonable person under these circumstances to not feel free to leave" and, accordingly, by the time Isais told Officer Duarte of his probation status, he already had been detained within the meaning of the Fourth Amendment.

"[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." (*United States v. Calandra* (1974) 414 U.S. 338, 347.) "For purposes of Fourth Amendment analysis, 'police "contacts" or "interactions" with individuals' include consensual encounters, detentions, and arrests, with consensual encounters being the least intrusive, and arrests the most intrusive, of these contacts." (*People v. Gutierrez* (2018) 21 Cal.App.5th 1146, 1152–1153.) An encounter is consensual when an officer approaches a person in a public place and asks questions, and the person voluntarily answers those questions. Consensual encounters do not violate the Fourth Amendment. (*People v. Brown* (2015) 61 Cal.4th 968, 974 ["consensual encounters present no constitutional concerns and do not require justification"].) If, however, an officer uses authority or physical force to restrain someone, that is a seizure and must be justified under the Fourth Amendment. (*Ibid.*) A person is restrained "'if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,"' or '"otherwise terminate the encounter"' [citation], and if the person actually submits to the show of authority [citation]." (*Ibid.*)

A recent California Supreme Court case, *People v. Tacardon* (2022) 14 Cal.5th 235 (*Tacardon*), is instructive on the difference between a consensual encounter

5

and a detention. In *Tacardon*, the officer noticed three individuals sitting in a car legally parked on the street, saw smoke coming from the windows, made eye contact with the occupants of the car as he drove past, then made a U-turn and parked 15-20 feet behind the car. The officer turned on his spotlight and directed it at the car, and then walked toward the car. Using a flashlight to illuminate the car's interior, the officer asked the occupants to identify themselves and asked the driver (Tacardon) if he was on probation or parole. The Supreme Court held these facts and circumstances did not amount to a detention of Tacardon. (*Id.* at p. 248 ["under the totality of the circumstances here, Tacardon was not detained"].)[2]

The facts of Officer Duarte's encounter with Isais are strikingly similar to those found not to be a detention in *Tacardon*. Here, the officers saw at least one individual sitting in a legally parked car and observed something that suggested a potential narcotics sale. They circled the car, parked behind it, and walked toward the car. One of the officers asked two of the passengers if they were on probation. The other officer said nothing. As in *Tacardon*, this does not amount to a detention.

Citing *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*) and *People v. Kasrawi* (2021) 65 Cal.App.5th 751 (*Kasrawi*), Isais argues he was detained because the officers "immediately and hurriedly" approached the Nissan from two sides once they had parked and immediately asked about the occupants' probationary status. (*Garry,* at pp. 1111–1112.) In *Garry,* the officer "all but ran directly at [the defendant], covering 35 feet in just two and one-half to three seconds, asking defendant about his legal status as

---

[2] The California Supreme Court nevertheless remanded the case for a determination of whether Tacardon was aware the officer had, while walking toward the car, directed a female passenger, who had exited the car, to stand in a certain location. The Supreme Court concluded the officer's show of authority toward the female passenger could have communicated to Tacardon that he was not free to leave. (*Id.* at pp. 253–255.)

he did so." (*Id.* at p. 1112.) In *Kasrawi*, the defendant was handcuffed only 15 seconds after the officer got out of his car. (*Kasrawi,* at p. 755.)

The facts here—particularly as shown on the video of the encounter—do not support Isais's arguments. Unlike the officers in *Garry* and *Kasrawi*, Officer Duarte did not run toward the Nissan or even move rapidly. Like the officer in *Tacardon* (*Tacardon, supra,* 14 Cal.5th at p. 239), Officer Duarte walked from his police car to the Nissan. It took him approximately 12 seconds from the time he stepped out of the police car to reach the Nissan and another approximately 8 seconds to begin speaking to the passengers. He then spent about 22 seconds speaking with the passenger in the back seat and generally to the passengers in the car before speaking directly to Isais. About 6 seconds later, Isais acknowledged he was on "109" probation. Once Isais said he was on a "109" probation, Officer Duarte was entitled, by law, to detain him and conduct a search without a warrant.[3] Officer Duarte waited more than 18 seconds after learning Isais was on PRCS before detaining him by directing him to place his hands on the steering wheel.

From the time Officer Duarte stepped out of his patrol car to the time he asked Isais to put his hands on the steering wheel, more than a minute elapsed. Neither officer stood in front of the Nissan or tried to block it. Until Isais acknowledged his

---

[3] Assembly Bill 109 (Stats. 2011, Ch. 15, § 479), enacted as Penal Code section 3450 et seq., creates an alternative to traditional probation and parole, known as Postrelease Community Supervision or PRCS. By statute, all individuals placed on PRCS are subject to warrantless search. (Pen. Code, § 3465 [individuals placed on PRCS and their residences and possessions "shall be subject to search and seizure at any time of the day or night, with or without a warrant"].) "[A]n officer's knowledge that [an] individual is on PRCS is equivalent to knowledge that he or she is subject to a search condition." (*People v. Douglas* (2015) 240 Cal.App.4th 855, 865.)

probation status, neither Officer Duarte nor Officer Rollon made any attempt to limit his movement or that of his vehicle.

Isais also argues he was detained as soon as the officers exited their patrol car because the second officer, Officer Rollon, was "handling his gun," "display[ing] his firearm," and "exhibiting his weapon in an intimidating way" during the encounter. Neither the testimony at the suppression hearing nor the videotape of the encounter supports these assertions. At most, the video shows that at times Officer Rollon rested his hand on his weapon, but there is no evidence he drew it, brandished it, or handled it at all, much less in an "intimidating" manner.

Isais's reliance on *United States v. Chan-Jimenez* (9th Cir. 1997) 125 F.3d 1324 (*Chan-Jimenez*) is unavailing. In *Chan-Jimenez,* a police officer in an unmarked vehicle followed the defendant's truck for a mile and a half and, when the truck pulled over and the driver raised the hood, the officer pulled behind the truck and activated his emergency light. After getting out of his car, the officer identified himself and asked for the driver's license and registration. The driver complied and the officer confirmed they were in order. The officer did not, however, return the license and registration. Instead, while retaining the driver's documents and with his hand on his revolver, the officer asked the driver if he could search the truck. The officer did not administer any warnings under *Miranda* v. *Arizona* (1966) 384 U.S. 436 (*Miranda*) or inform the driver of his right to refuse to consent to the search. The driver did not respond verbally to the officer's request for permission to search the truck. Instead, he walked to the back of the truck and lifted the tarp covering the truck bed.

The *Chan-Jimenez* court considered two issues: First, whether the encounter between the driver and the officer was a seizure, and second, whether the driver voluntarily consented to the search of his truck. The court found the driver was seized within the meaning of the Fourth Amendment when the officer "obtained and failed to return his driver's license and registration, and proceeded with an investigation."

8

(*Chan-Jimenez, supra*, 125 F.3d at p. 1326.) The court noted the driver could not lawfully have driven away without the documents. The court separately found the driver did not freely and voluntarily consent to the search under the totality of the circumstances. (*Ibid.* [the driver had been seized, no *Miranda* warning was given, the driver was not informed of his right to refuse to consent, and the officer kept his hand on his revolver at all times].)

The totality of the circumstances here is very different from that in *Chan-Jimenez*. Officer Duarte did not ask for, take, or retain anyone's documentation. Officer Duarte did not have his hand on his gun at any time. Officer Rollon did not have his hand on his gun at all times. There is no issue of consent to search because once Isais admitted he was on probation with a search condition, the search was lawful.

We conclude the officers' initial encounter with Isais was consensual. It became a detention only after Isais advised Officer Duarte he was on a PRCS probation and Officer Duarte then lawfully detained Isais pursuant to his PRCS search condition. Accordingly, there was no violation of the Fourth Amendment, and the trial court did not err in denying Isais's motion to suppress.[4]

---

[4] Because we determine the initial encounter was consensual, we need not address the issue of reasonable suspicion raised by Isais.

9

DISPOSITION

The judgment is affirmed.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.