**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50194 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 3:18-cr-05574-BAS-1 |
| KYLE ANTHONY SHEPHARD, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted April 8, 2024
Pasadena, California

Before: BERZON and MENDOZA, Circuit Judges, and BOLTON,** District
Judge.
Concurrence by Judge MENDOZA.

Kyle Shephard appeals the district court's denial of his motion to suppress

the evidence seized during a search of his hotel room. He contends that the district

court erred in determining that he voluntarily consented to the search.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

We review the district court's denial of a motion to suppress de novo, *United States v. Magdirila*, 962 F.3d 1152, 1156 (9th Cir. 2020), and the court's underlying factual determinations, including whether consent was voluntarily given, for clear error. *United States v. Todhunter*, 297 F.3d 886, 889, 891 (9th Cir. 2002). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1.      "It is well settled that 'a search conducted pursuant to a valid consent is constitutionally permissible.'" *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). The district court did not clearly err in determining that Shephard consented to the search of his hotel room.

We give "special deference to the district court's credibility determinations," *United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998), though a credibility determination may be clearly erroneous if a witness's testimony is contradicted by objective evidence, or the testimony is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). The district court discredited Shephard's testimony that he objected to the search and instead credited Deputy Maleno's testimony that when he asked Shephard whether Shephard would consent to the search, Shephard responded, "yes, I guess." The district court also credited Deputy Maleno and Deputy Manning's testimony that they did not obtain Shephard's

2

written consent because they had been informed, erroneously as it turned out, that the holding cell where they placed Shephard was both audio and video recorded.

Shephard asserts that the district court clearly erred in crediting Deputy Maleno's testimony because of "documented incidents" of Maleno's untruthfulness, including prior false statements. Though prior false statements are probative of a witness's credibility, *see United States v. Reid*, 634 F.2d 469, 473–74 (9th Cir. 1980), the district court was not required to discredit Maleno's testimony because a civil jury had found that he provided false statements in an unrelated case, nor because of inaccuracies in documentation regarding Shephard's search and arrest. The district judge was intimately familiar with Deputy Maleno's history of untruthfulness; she had presided over the case in which Maleno was found liable for making false statements under oath. The court allowed Shephard's counsel to examine Maleno about his prior false statements because the court considered these statements "extremely relevant" to his credibility.

Because Deputy Maleno's testimony was not "internally inconsistent" or contradicted by external evidence, the district court did not clearly err in crediting his testimony and concluding that Shephard consented to the search of his hotel room. *Anderson*, 470 U.S. at 575; *Patayan Soriano*, 361 F.3d at 503.

2. Whether Shephard's consent to the search was voluntary is determined from the totality of the circumstances. *United States v. Chan-Jimenez*,

3

125 F.3d 1324, 1327 (9th Cir. 1997). Factors to consider include: "(1) whether [the] defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether [the] defendant was told a search warrant could be obtained." *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988) (internal citations omitted). Although the government bears the burden of establishing voluntariness, "we review the factual record in the light most favorable to the verdict." *United States v. Kim*, 25 F.3d 1426, 1431–32 (9th Cir. 1994). The district court did not clearly err in determining that Shephard voluntarily consented to the search of his hotel room.

The district court acknowledged that several factors weighed against finding Shephard's consent voluntary, including that he was in custody, handcuffed to the wall, in what was "clearly a prisoner cell." Additionally, officers did not give Shephard *Miranda* warnings. But that a defendant is in custody "does not itself negate voluntariness" with regard to consent to search. *United States v. Alfonso*, 759 F.2d 728, 741 (9th Cir. 1985).  That a defendant does not receive *Miranda* warnings, on its own, is also not dispositive.  *Castillo*, 866 F.2d at 1082. Deputy Maleno also did not inform Shephard that he could refuse to consent, which "slightly favors" Shephard. *United States v. Russell*, 664 F.3d 1279, 1281–82 (9th Cir. 2012); *United States v. Vongxay*, 594 F.3d 1111, 1120 n.6 (9th Cir. 2010).

4

The district court also recognized that several factors weighed in favor of finding voluntariness. No officers had their guns drawn. *Compare United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000) (citing the fact that the officer "was dressed in plain clothes and never flashed her gun as a display of authority" as weighing in favor of voluntariness), *with Chan-Jimenez*, 125 F.3d at 1327 (citing the fact that "the officer kept his hand on his revolver at all times" as evidence of involuntariness). Relatedly, while Shephard and Deputy Maleno were in a small holding cell when Shephard gave consent, the district court noted that the entire encounter was "casual." *C.f. United States v. Taylor*, 60 F.4th 1233, 1243 (9th Cir. 2023) ("The district court also found—and the bodycam footage bears out—that 'the entire interaction was calm[] and could even be described as friendly.'").

We agree with the district court that the fifth factor—whether officers told Shephard they could obtain a warrant—"depends on the particular circumstances of the case and thus hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner." *Cormier*, 220 F.3d at 1112. The district court concluded that Deputy Maleno did not threaten Shephard with a warrant or suggest that refusing consent would be futile, and Deputy Maleno had a reasonable basis for informing Shephard that a search warrant could be obtained because officers already had a warrant for Shephard's person, home, and car. The court's determination that this factor weighed in favor of voluntariness was not

5

clearly erroneous. *See id.* at 1112–13.

The district court did not clearly error in considering the totality of the circumstances surrounding the voluntariness of Shephard's consent. While "many of this court's decisions upholding consent as voluntary are supported by at least several of the factors," the factors are "guideposts" and "not a checklist of requirements to be satisfied." *Patayan Soriano*, 361 F.3d at 502, 503 (first quoting *Chan-Jimenez*, 125 F.3d at 1327 n.3). Viewing the "record in the light most favorable to the verdict," *Kim*, 25 F.3d at 1432, we cannot conclude that the district court clearly erred in determining that Shephard voluntarily consented to the search of his hotel room.

**AFFIRMED.**

*United States v. Shephard*, 21-50194
MENDOZA, Circuit Judge, joined by BERZON, Circuit Judge, concurring:

Frankly, I doubt that a person in Shephard's shoes could freely and voluntarily consent to a search. But I am cognizant of the deference that we owe to the district court's findings, and of our obligation to review the record in the light most favorable to the district court's decision. *See United States v. Alfonso*, 759 F.2d 728, 740 (9th Cir. 1985). With those considerations in mind, I agree with the majority that the district court's voluntariness finding was not "illogical, implausible, or without support in the record." *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). I write separately, however, to probe the impact that being in custody has on a person's ability to give voluntary consent.

Whether a defendant is in custody is one factor that courts consider when determining whether a defendant voluntarily consented to a search. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988). "Custody" is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508–09 (2012). To determine whether a person is in custody, we first look to the relevant circumstances, and ask whether "a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* at 509 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)) (alteration in *Howes*). But because "[n]ot all restraints on freedom of movement amount to custody," we must consider as a second step "whether the

relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.*

Here, the district court found that Shephard was in custody, but that he nevertheless voluntarily consented to the search of his hotel room. In reaching that conclusion, the district court found that there was a "casual atmosphere" and that the officers were "not intimidating." The district court highlighted that the officers did not draw their guns, and that they did not threaten Shephard when they told him they could get a warrant.

I am concerned, however, that the district court did not fully appreciate the ramifications of its custody finding. That Shephard was in custody implies that the environment presented the "same inherently coercive pressures" as the stationhouse at issue in *Miranda*. *See Howes*, 565 U.S. at 509. It also implies that the circumstances presented "a serious danger of coercion." *See id.* But the district court largely breezed past these implications. Instead, it downplayed the psychological impact that custody had on Shephard by finding that the atmosphere was "casual" and that the officers were "not intimidating" because they did not draw their weapons. Although not entirely baseless, those findings are suspect. After all, the officers handcuffed Shephard, escorted him to a small "prisoner cell" in the back of the casino, handcuffed him to the wall, declined to tell him when or if he would be released, and never gave him *Miranda* warnings or advised him that

2

he could refuse to consent.  Regardless of how *polite* the officers were, the officers placed Shephard in an environment that inherently overpowers a person's sense of agency and his will to say "no."  *See Thompson*, 516 U.S. at 112.  And the record shows that Shephard succumbed to that mental pressure, giving the officers what they wanted: permission to search his hotel room.  In fact, when asked if he gave consent, Shephard said "Yes, I guess so."  Those sound like words of defeat from a man who felt that he had no choice in the matter.

In my view, being in custody has a powerful impact on the person restrained. That is especially true here, where Shephard was in custody while cuffed to a wall in a small cell at the back of a casino without a sense of when he would be released.  Those circumstances would have a particularly strong impact on anyone, even an innocent man.  The district court failed to give those circumstances adequate weight.  While I cannot say that the district court's voluntariness finding is clearly erroneous, I urge district courts to adequately weigh the corrosive impact that custody has on a person's ability to voluntarily consent to a search.  Failure to do so erodes rights in a manner that the Constitution does not abide.